IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| T&W HOLDING COMPANY, LLC; PALAPAS, INC.; and IT'S FIVE O'CLOCK HERE, LLC; § § § § | |
| *Plaintiffs*; § | Civil Action No. 3:22-cv-7 |
| vs. § § | |
| CITY OF KEMAH, TEXAS; § § | |
| *Defendants*. § | |

**PLAINTIFFS' ORIGINAL COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW Plaintiffs T&W HOLDING COMPANY, LLC, PALAPAS INC., and IT'S FIVE O'CLOCK HERE, LLC, and file this their Original Complaint and Application for Preliminary and Permanent Injunctive Relief against Defendant CITY OF KEMAH, TEXAS, and would respectfully show the Court as follows:

### I.   INTRODUCTION

1. This case arises from the City of Kemah's egregious, malicious, and unconstitutional abuses of power through which it has sought to destroy Plaintiffs' businesses by depriving them of substantially all economic use of their real and personal property. Plaintiffs own and operate a bar, food truck, and two residential units at a mixed-use property in the heart of Kemah's Lighthouse District at 606 & 608 6th Street, Kemah, Texas. The property was built in or around 1985, renovated in or around 1992, and has been used for essentially the same purposes since then. In

February 2021, Plaintiffs purchased the property and businesses operating thereon. Ever since, the City of Kemah—acting under color of law by and through its Building Code Enforcement officer, Brandon Shoaf—has relentlessly harassed Plaintiffs, arbitrarily revoked certificates of occupancy, and refused to issue permits without justification. Even more astonishing, Shoaf (or someone acting at his direction) unlawfully trespassed onto Plaintiffs' property after business hours and seized Plaintiffs' food truck—without any prior notice or legal authority. These actions were taken under the pretext of utterly unfounded alleged building code violations. As a result of these abusive tactics, Plaintiffs have been forced to shut down operations on all four floors of the building, leaving only the outdoor patio as remaining useable space. And despite Plaintiffs' written demand for the return of the food truck, the City of Kemah has failed to return it or even respond.

2. This City of Kemah's and Shoaf's actions are precisely the type of government conduct that violates the Constitution because it "goes too far," as United States Supreme Court Justice Holmes aptly explained in *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393 (1922). Specifically, the City of Kemah's and Shoaf's actions violate the Takings, Due Process, and Equal Protection clauses of the United States and Texas Constitutions.

3. Plaintiffs have gone above and beyond to amicably resolve this dispute, but to no avail. Regrettably, the City of Kemah and Shoaf continue to act in bad faith and escalate their egregious abuses of power to deprive Plaintiffs of all economic use of their Property. It has, therefore, become necessary to seek intervention from this Court to put an end to this outrageous misconduct.

## II.      PARTIES

4.      Plaintiff T&W HOLDING COMPANY, LLC (hereinafter referred to as "T&W") is a Texas limited liability company.

5.      Plaintiff PALAPAS INC. (hereinafter referred to as "Palapas") is a Texas corporation.

6.      Plaintiff IT'S FIVE O'CLOCK HERE LLC (herein after referred to as "It's Five O'clock") is a Texas limited liability company.

7.      Defendant CITY OF KEMAH, TEXAS (herein after referred to as "Kemah") is an incorporated city located in Galveston County, Texas that may be served with process through its mayor, Carl A. Joiner, at his business address of 1401 State Hwy. 146, Kemah, Texas 77565.

8.      T&W, Palapas, and It's Five O'clock are herein after collectedly referred to sometimes as "Plaintiffs."

## III.      JURISDICTION AND VENUE

9.      This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this is a civil matter arising under the Constitution and laws of the United States, and to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity that the Constitution secures to the People.

10.      This Court also has supplemental jurisdiction of Plaintiffs' related claims under state law. 28 U.S.C. § 1367.

11.      Plaintiffs' claims for declaratory and injunctive relief are authorized under 28 U.S.C. § 2201, Rules 57 and 65 of the Federal Rules of Civil Procedure.

12. Venue of this case is proper in this District and Division, pursuant to 28 U.S.C. § 1391(b), because the City of Kemah and Plaintiffs property are located within the Galveston United States Southern District of Texas, Galveston Division.

## IV.   FACTUAL BACKGROUD

### A. Description of Plaintiffs' Property And Businesses

13. Plaintiff T&W Holdings, LLC ("T&W") owns a 4-story mixed-use building situated on 5,650 square feet of land located at 606 6th Street, Kemah, Texas (the "Property"). A legal description and survey of the Property are attached hereto as **Exhibit A**. Since at least 1992, Plaintiff T&W and its predecessors-in-interest have continuously used the third and fourth floors for residential purposes.

14. For the past 20 years, Plaintiff Palapas and its predecessors have continuously operated a bar and restaurant called "Palapa Bar" on the first and second floors and outdoor patio area of the building; more specifically described as 606 and 608 6th St., Suites A and B, Kemah, Texas.

15. Plaintiff It's Five O'clock owns and operates a mobile food truck. From August 2020 to October 2021, the Food Truck was situated on Plaintiff T&W's private property—*within the Property's boundary lines*—until it was unlawfully seized by the City of Kemah in October 2021.

### B. Events leading up to City of Kemah's unlawful actions against Plaintiffs.

16. In February 2021, a severe cold weather event known as Winter Storm Uri hit Southeast Texas, leaving most of the area in a hard freeze with no power or running water for several days. The Palapa Bar and upper floors of the building

sustained catastrophic damage to the plumbing system. Many other businesses in the area, including Voodoo Hut, Monkey Bar, and Kipp Rose, sustained severe damage to their plumbing systems as well. Many local businesses were scrambling for parts to repair plumbing breakages after the freeze. Upon information and belief, the City of Kemah allowed businesses in the area to repair broken water and sewer lines without permits.

17. On or around March 11, 2021, Palapa Bar and the Food Truck reopened for business after making what appeared to be necessary plumbing repairs. Unfortunately, the freeze damage was more extensive than initially believed, making it impossible to reopen without making further repairs.

18. On or around March 25, 2021, Plaintiffs obtained an emergency work order and repair of freeze damage restarts.

19. In April 2021, Plaintiffs' owner, Matthew Placek, met with Terri Gale (Mayor of Kemah at the time), Walter Gant (City Administrator), Brandon Shoaf (Building Code Administrator), and Walter Wilson (General Manager of Palapa). The purpose of this meeting was to discuss future plans for Palapa. During the meeting, Placek discussed his plans to replace 4,000 sf of concrete in the outdoor area, repaint building, replace palapa leaf roofing to comply with health code standards, convert the Mobile food truck into a compact kitchen, and place the food truck in the area designated in a variance approved by the City of Kemah. Shoaf recommended converting the Food Truck into a compact kitchen by directly connecting plumbing and electric to the truck. Aside from Shoaf's recommendation, neither Shoaf nor any other city official raised any concerns about the proposed plans.

20. On April 5, 2021, Plaintiffs commenced work on the 4,000 square-foot concrete job by breaking out the existing concrete. No city official raised any issues about the work being performed, including the deck, painting, plumbing and concrete. Therefore, Plaintiffs proceeded with the construction in accordance with the plans as discussed with the city officials.

21. On April 6, 2021, Brandon Shoaf conducted an inspection and walked all throughout the Property. After completing his inspection, Shoaf signed off on the permit for the concrete work. Shoaf raised no concerns about the plumbing and electrical repairs.

### C. In An About-Face, The City Of Kemah Begins Taking Unlawful Actions To Destroy Plaintiffs' Businesses.

#### 1. *Refusal to issue permits; revocation of certificates of occupancy; and baseless stop work orders for the Palapa Bar.*

22. On April 14, 2021, Shoaf visited the Property to inquire about the installation of the wooden deck. The deck was built within the boundary lines of the Property and complied with the variance previously granted by the City of Kemah. Nevertheless, Shoaf insisted—without citing any code section or other authority—that a permit is required. Upon information and belief, no permits are required for ground level wooden decks under the Kemah Code of Ordinances (or any other law).

23. Later that same day, on April 14, 2021, Shoaf returned to the Property and issued a "stop work" order on the deck project. Again, Shoaf failed to cite any specific code section that was violated. He merely demanded payment of permit fees.

24. Therefore, on April 16, 2021, Palapas' manager, Walt Wilson, went to City Hall to deliver a check to pay the permit fee Shoaf demanded. Shoaf refused to

accept the check, however, and stated that no permit would be issued unless additional drawings and plans for the deck were submitted.

25. Then, on April 20, 2021, Wilson attempted to file a permit application for the deck along with engineering drawings and plans and a check for the permit fees, in accordance with Shoaf's demands. Despite including everything Shoaf requested, Shoaf again refused to accept the application.

26. A few days later, on or around April 23, 2021, Shoaf sent a letter addressed to Walter Wilson stating, as follows:

> Allow this to serve as notification that thereof, of City Council's decision to not render a decision granting a variance allowing for overnight/extended parking of any mobile food vehicle at this time. In accordance with City Ordinances a Mobile food vehicle shall not operate between the hours of 2:00 a.m. and 6:00 a.m. and shall not be parked on location for more than a 24-hour period of time.

Shoaf cited no code section prohibiting a food truck from being stored on private property while it is not being operated, however. Upon information and belief, there is no such code section.

27. On April 29, 2021, the City of Kemah posted a "red tag" notice at the Property stating, "No permit on file for mobile food vehicle. Please remove by 04/30/2021 @ 11:00 AM." No notice was provided that the City intended to tow or otherwise seize the Food Truck. In any event, the Kemah Code of Ordinances does not authorize the City of Kemah to tow or seize food trucks from private property for lacking a permit to operate. For this type of violation, the city is only authorized to impose fines if a food truck is operating without a permit.

28. On April 29, 2021, the City of Kemah issued a Stop Work Order ("Stop Work Order") for the Property. The Stop Work Order states as follows:

City of Kemah was contacted by Galveston County Health District stating they would not be issuing a permit for a 'Food Establishment Permit' for stated address. At the present time the 'Mobile Food Vehicle' is not permitted and unlawfully stationed on location. Please remove the 'Mobile Food Vehicle' by Friday 4/30/2021 at 11:00am. End of report. BCS103.

\* \* \*

This **STOP WORK ORDER** shall remain in effect until application is made to the city of Kemah permits department and the required permit is issued."

29. On the evening of April 29, 2021, Placek learned of the red tag notice during a call with Walt Wilson, General Manager of Palapa Bar. Placek immediately complied with the order by ceasing operations of the Food Truck.

### 2. *Refusal to issue permits; revocation of certificates of occupancy; and baseless stop work orders for the Palapa Bar.*

30. As previously noted, the third and fourth floors of the building have been used as residential units since at least 1992. Plaintiff T&W purchased the Property with the expectation that he would be able to continue using these floors for residential purposes. In accordance with the Kemah Code of Ordinances applicable to Short-Term Rental properties, T&W registered with the City of Kemah and paid the applicable fees to rent the properties as vacation rental homes.

31. Despite the fact that no change in occupancy type resulted from renting the third and fourth floors as vacation rental homes, the City of Kemah claimed there was no certificate of occupancy and refused to issue one for the third and fourth floors of the building. The sole basis for their refusal was that the use of these floors as short-term rentals constituted a "change of occupancy type," which would require the units to be brought up to current code standards. Contrary to the City of Kemah's

assertions, however, the nature of the proposed use remained residential, regardless of the duration of any particular tenant's occupancy.  *See Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 291 (Tex. 2018).

32. To date, the City of Kemah has failed to articulate any valid basis to deny issuing permits or certificates of occupancy for the building.  Only generalized allegations of code violations have been asserted without any specificity as to what information is lacking or what work is required to cure them.  As a result, Plaintiffs T&W and Palapas have substantially lost all economic use of all four floors of the building.

### 3. *The City of Kemah unlawfully trespasses onto Plaintiffs' property and seizes the Food Truck.*

33. The morning of October 11, 2021, the City of Kemah caused Shoaf (or another person acting at his direction) to unlawfully enter Plaintiffs' private Property and seize the Food Truck.  The Food Truck was taken to an unknown destination without any advanced notice or due process whatsoever.  At the time of the unlawful trespass and seizure, the Food Truck was not operating and was lawfully stored on Plaintiffs' private property—within the Property boundary lines.

34. What's more, Plaintiffs' counsel had been actively engaged in discussions with the City of Kemah—including Brandon Shoaf, Dick Gregg, III, and Dick Gregg, Jr., the City Attorneys for Kemah—to get clarity on the alleged code violations and as to what was required to bring everything into compliance—if anything.  At no time prior to the unlawful seizure did the City of Kemah contact Plaintiffs or their counsel to provide notice of their intent to enter the Property to seize the Food Truck.

35. The City of Kemah's unlawful trespass and seizure of the Food Truck not only unlawfully deprived Plaintiff It's Five O'clock of its property, but also left T&W's Property and Palapas in a hazardous state that could have caused serious injury to patrons and by-passers. Specifically, the Food Truck was improperly disassembled from the deck, leaving an open area without a railing, posing a serious trip-and-fall hazard.

36. On November 16, 2021, It's Five O'clock sent a Demand for Immediate Return of Mobile Food Vehicle Letter to the City of Kemah. As of the date of filing this Original Complaint, the City of Kemah and Shoaf have failed to respond.

## V.   CAUSES OF ACTION

37. Pursuant to 42 U.S.C. § 1983, a person who, acting under color of law, subjects or causes any citizen to be subjected to the deprivation of any rights, privileges, or immunities secured by the United States Constitution, shall be liable to the party injured in an action at law.

38. At all relevant times, Shoaf and other officials and agents of the City of Kemah were acting in their official capacity on behalf of the City of Kemah. Defendants, acting under color of law, have subjected and caused Plaintiffs to be subjected to the deprivation of their rights, privileges, and immunities as secured by the Fifth and Fourteenth Amendments of the United States Constitution.

**COUNT ONE:** *UNCONSTITUTIONAL TAKING OF PRIVATE PROPERTY WITHOUT JUST COMPENSATION*

39. Plaintiffs incorporate by reference the foregoing paragraphs and set forth verbatim herein as allowed by Fed. R. Civ. P. 10(c).

40. Plaintiffs assert claims against the City of Kemah for unconstitutional takings pursuant to the Fifth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983; and pursuant to the Texas Constitution, Article I, §§ 13, 17, and 19.

41. As set forth herein, Defendants' actions constitute unconstitutional takings of private property both physically and inversely under the doctrine of inverse condemnation. The Fifth Amendment provides that "nor shall private property be taken for public use, without just compensation." U.S. CONST. AMEND. V. The Texas Constitution provides the equivalent guarantee that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made...." TEX. CONST. ART. I, § 17. Under the Supreme Court's "modern takings law, there is 'no magic formula' to determine 'whether a given government interference with property is a taking.'" *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2187 (2019) (citation omitted). Takings claims involve several fundamental concepts.

42. First, the validity of the law or decree that effects the taking is not the focal point. Rather, the point is "to secure compensation in the event of otherwise proper interference...." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539 (2005). Second, there must be a balance between "the individual's right to retain the interests and exercise the freedoms at the core of private property ownership" and the "government's well-established power to adjust rights for the public good." *Murr v. Wisconsin*, 137 S. Ct. 1933, 1943 (2017) (cleaned-up). Third, "[i]n all instances, the analysis must be driven 'by the purpose of the Takings Clause, which is to prevent the

government from 'forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" *Id.*, quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960).

43. As alleged herein, the City of Kemah's actions constitute an actual physical and regulatory taking that "goes too far" by depriving Plaintiffs substantially of all economic use of their Property without justification and without providing just compensation. *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393 (1922). Plaintiffs' claims and the remedies sought for said actions are ripe because "[t]he Fifth Amendment right to full compensation arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner." *Knick*, 139 S. Ct. at 2170.

44. The economic impact of the City of Kemah's actions in denying Plaintiffs' right to use their private property for economically beneficial purposes is severe. *Murr*, 137 S. Ct. at 1943. Not only has the City of Kemah eliminated Plaintiffs' ability to generate revenue from the sale of food and beverages on its property, it has caused Plaintiffs to fire at least ten employees and permanently damaged Plaintiffs' good will and reputation in the community. The City of Kemah's actions have, therefore, rendered Plaintiffs' property economically idle. *First Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304 (1987); *Lucas v. S.C. Costal Council*, 505 U.S. 1003, 1019 (1992).

45. Further, the City of Kemah's actions have interfered with Plaintiffs' distinct investment-backed expectations. Plaintiffs bought the property in reliance on the reasonable premise that they would be able to continue operating a bar that has

been operating for nearly twenty years; that they would be able to continue using the third and fourth floors of the building for residential purposes; and that they would be able to continue using the Food Truck in accordance with the laws in place at the time operations commenced.

46. Accordingly, Plaintiffs' request, at a minimum, damages in the form of just compensation for lost net rental value, lost profits, and lost value of the property's use for the period of time Plaintiffs have been deprived of the use and enjoyment of their Property.

**COUNTS TWO:** *VIOLATIONS OF THE DUE PROCESS CLAUSES OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION NINETEEN OF THE TEXAS CONSTITUTION*

47. Plaintiffs incorporate by reference the foregoing paragraphs and set forth verbatim herein as allowed by Fed. R. Civ. P. 10(c).

48. City of Kemah's actions unlawfully deprived Plaintiffs of their Property without due process of law in violation of the Due Process Clause of the Fourteenth Amendment of the United States of America Constitution. The Due Process Clause of the Fourteenth Amendment declares, "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." Plaintiffs' right to due process is a fundamental, constitutional guarantee, which requires fair notice and a meaningful opportunity to be heard.

49. City of Kemah's actions also unjustly deprived Plaintiffs of their Property without due process in violation of Article I, Section 19 of the Texas Constitution. Article I, Section 19 of the Texas Constitution provides "No citizen of this State shall

be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." Article I, Section 13 of the Texas Constitution further provides that "All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."

50. Plaintiff It's Five O'clock was given no notice whatsoever that Defendant intended to have an undisclosed party seize the Food Truck from T&W's private property to an undisclosed location. And there is no statute, ordinance, or other law that provides the City of Kemah with legal authority to take such action. As of the date of filing this Original Complaint, Defendants have still failed to disclose the location of the Food Truck to It's Five O'clock.

51. Moreover, neither the City of Kemah nor the undisclosed tow company provided It's Five O'clock a tow ticket, which is required by law for nonconsent tow from private property. It's Five O'clock was entitled to immediately receive a copy of the tow ticket and a statement of its consumer rights. Specifically, It's Five O'clock was entitled to but did not receive from the tow company, Shoaf, or Kemah: (1) a copy of the tow ticket, which must: (i) itemize each charge; (ii) characterize the fees using the identical fee structure stated in the towing company's nonconsent towing fee schedule with the party authorizing the tow; and (iii) contain the licensed name of the towing company, publicly listed telephone number, towing company certificate of registration number, and the license number of the towing operator); and (2) a statement of It's Five O'clock's consumer rights with respect to the tow.

52. Accordingly, Plaintiffs are entitled to and therefore seek, at a minimum, damages in the form of just compensation for lost net rental value, lost profits, and lost value of the property's use for the period of time Plaintiffs have been deprived of the use and enjoyment of their Property and the Food Truck.

### VI. APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

53. Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs ask the Court to issue preliminary and permanent injunctive relief as follows:

   i. enjoin City of Kemah and its officers, agents, servants, employees, and attorneys and other persons who are in active concert or participation with them from denying or interfering with T&W's the right to use the third and fourth floors of the building for short-term residential rental purposes;

   ii. issue a writ of mandamus requiring City of Kemah to issue temporary or permanent certificates of occupancy, as the Court deems proper and just, for all floors of the building, absent a showing of good cause, and on such other terms and conditions the Court deems equitable and just;

   iii. issue a writ of mandamus compelling the City of Kemah and its officers, agents, servants, employees, and attorneys and other persons who are in active concert or participation with them to immediately return the Food Truck to the Property and enjoining them from removing it thereafter, absent a showing of good cause,

        and on such other terms and conditions the Court deems equitable and just without approval from this Court;

   iv.   enjoin the City of Kemah and its officers, agents, servants, employees, and attorneys and other persons who are in active concert or participation with them from issuing red tags, stop work orders, or taking other enforcement action to interfere with Plaintiffs' business operations at the Property without seeking approval from this Court, and on such other terms and conditions the Court deems equitable and just.

54. Plaintiffs are entitled to injunctive relief because they have (1) a substantial likelihood of success on the merits; (2) the City of Kemah's conduct presents a substantial threat that Plaintiffs will suffer irreparable injury absent the requested injunction; (3) this threatened injury outweighs any harm the injunction might cause the City of Kemah; and (4) the injunction will not impair the public interest.

55. Plaintiffs have a strong likelihood of success on the merits. Plaintiffs have a constitutionally protected property and liberty interests as set forth above. The risk of erroneous deprivation of such interests in violation of Plaintiffs' due process rights is certain to continue unless the Court grants a preliminary injunction. There is a strong interest in protecting Plaintiffs from further deprivations of their constitutional rights because the City of Kemah's conduct, if not abated, will cause Plaintiffs' loss of use of the Property and ongoing financial hardship, up to and including going out of business.

56. Absent an injunction, Plaintiffs will suffer irreparable injury. Businesses have the right to transact lawful business without fear of being shut down without warning or in derogation of equal protection of laws. The loss of constitutional freedoms for "even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Particularly in the context of a pre-deprivation due process violation, "no later hearing and no damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred." *Fuentes v. Shevin*, 407 U.S. 67, 81 (1972); *see also Carey v. Piphus*, 435 U.S. 247, 266 (1978) ("Even if respondents' suspensions were justified, and even if they did not suffer any other actual injury, the fact remains that they were deprived of their right to procedural due process"). Monetary relief is insufficient as a matter of law.

57. An injunction will not significantly burden any of the Defendants' interests but will instead serve and enhance the public's interests. Nothing in the requested injunction inhibits the City of Kemah's legitimate regulatory enforcement functions vis-à-vis the City of Kemah's Code of Ordinances and related laws. Indeed, the public interest favors the issuance of injunctive relief to protect the constitutional rights at stake in this case and to ensure that the City of Kemah does not exercise such unbridled authority without affording citizens due process of law in the course of enforcing city's ordinances.

### VII. REQUEST FOR EXPEDITED HEARING ON PRELIMINARY INJUNCTION

58. Pursuant to Federal Rules of Civil Procedure 6(c) and 65(a)(2), Plaintiffs

will notify the City of Kemah of the filing of this lawsuit, provide them with a copy, and notify them that Plaintiffs seek a preliminary injunction hearing on or before January 19, 2022.

### VIII. REQUEST FOR EXPEDITED DISCOVERY

59. Pursuant to Federal Rule of Civil Procedure 26(d), Plaintiffs ask the Court to authorize expedited discovery in advance of the preliminary injunction hearing. Good cause exists to order expedited discovery because Plaintiffs are in need of discovery to prepare for the preliminary injunction hearing and to adduce evidence establishing Plaintiffs' right to a preliminary injunction. *See Dallas Buyers Club, LLC v. Ripple*, No. H-14339, 2015 WL 1346217 at *1 (S.D. Tex. Mar. 23, 2015).

### IX. DAMAGES AND LIABLITY

60. Plaintiffs repeat and incorporate by reference the paragraphs above and hereinafter. Plaintiffs seek damages within the jurisdictional limits of this Court

**A. Actual Damages**

61. As a result of City of Kemah's actions described herein, Plaintiffs suffered actual damages, including, but not limited to, lost profits, lost use of the Property and Food Truck, out-of-pocket expenses associated with removal of the Food Truck, and attorneys' fees and costs.

**B. Attorney's Fees and Costs**

62. Plaintiffs request payment of its reasonable attorneys' fees and costs. Plaintiffs are entitled to recover reasonable and necessary attorneys' fees and expert fees. 42 U.S.C. § 1988.

## X. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray that Defendants be cited to appear and answer herein and that upon final hearing Plaintiff be awarded judgment as follows:

a. Injunctive, declaratory, and monetary relief as set forth herein;

b. Expert fees;

c. Costs of suit;

d. Reasonable and necessary attorney's fees and costs; and

e. All such other and further relief, both at law and in equity, to which Plaintiffs are justly entitled.

Respectfully submitted,

**WILSON, CRIBBS & GOREN, P.C.**

By: /s/ Brian Kilpatrick
    Brian Kilpatrick
    Texas Bar No. 24074533
    Scot Clinton
    Texas Bar No. 24045667
    Jennifer Collins
    Texas Bar No. 24110415
2500 Fannin Street
Houston, Texas 77002
Tel. (713) 222-9000
Fax. (713) 229-8824
bkilpatrick@wcglaw.com
sclinton@wcglaw.com
jcollins@wcglaw.com

***ATTORNEYS FOR PLAINTIFFS***