1                    IN THE UNITED STATES DISTRICT COURT

2                  FOR THE SOUTHERN DISTRICT OF TEXAS

3                         GALVESTON DIVISION

4  T&W HOLDING COMPANY, LLC et al§    CASE NO. 3:22-CV-00007
                                 §    GALVESTON TX
5  VERSUS                        §    FRIDAY,
                                 §    JUNE 3, 2022
6  CITY OF KEMAH, TEXAS          §    10:01 AM TO 10:48 AM

7                         DISCOVERY HEARING

8              BEFORE THE HONORABLE ANDREW M. EDISON
                 UNITED STATES MAGISTRATE JUDGE

9
                           APPEARANCES:
10

11      FOR THE PARTIES:              SEE NEXT PAGE

12      COURT REPORTER:               VANESA ARANDA

13      COURT CLERK:                  RUBEN CASTRO

14

15

16

17

18

19

20              TRANSCRIPTION SERVICE BY:

21              Veritext Legal Solutions
                330 Old Country Road, Suite 300
22                   Mineola, NY 11501
                Tel: 800-727-6396 ▼ www.veritext.com
23
        Proceedings recorded by electronic sound recording; transcript
24              produced by transcription service.

25

```
 1                              APPEARANCES:

 2    FOR THE PLAINTIFF:            WILSON, CRIBBS & GOREN, P.C.
                                    Brian Kilpatrick
 3                                  2500 Fannin Street
                                    Houston, TX 77002
 4                                  713-222-9000

 5    FOR THE DEFENDANTS:           LEWIS BRISBOIS BISGAARD SMITH LLP
                                    Bill Helfand
 6                                  Justin Pfeiffer
                                    24 Greenway Plaza
 7                                  Suite 1400
                                    Houston, TX 77046
 8                                  713-659-6767

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1              <u>GALVESTON, TEXAS; FRIDAY, JUNE 3, 2022; 10:01 AM</u>

2              THE COURT:  Good morning, everyone.  We're here

3     today, obviously, on Case 3:22-cv-7, T&W Holding Company LLC

4     and Palapas, Inc. and It's Five O'Clock Here, LLC v. City of

5     Kemah, Texas.  Looks like we have Mr. Kilpatrick for the

6     plaintiff and Mr. Helfand and Mr. Pfeiffer for the defendants.

7              Let's just jump right into it.  Obviously, you

8     submitted the joint discovery letter late last night, Docket

9     Entry 21.  Obviously, didn't seem like our efforts to get the

10    parties together to converse did much, so let's just walk

11    through the issues.  I got until nine today.  If we need to,

12    we'll resume another time and just go through them one by one.

13             As I understand it, everything in Exhibit A, the

14    letter about interrogatories, Exhibit B, the letter about

15    request for production, and these four designated issues on the

16    depositions are at play, other than Interrogatory 11,

17    Interrogatory 24, request for production 8 and 13 through 15.

18    Is that right, Mr. Kilpatrick?

19             MR. KILPATRICK:  That's correct, Your Honor.

20             THE COURT:  Okay.  Let's jump into it.  One, I don't

21    have the interrogatories, despite my request to be given them,

22    so I have no idea on the general objections.  All I know is

23    that the plaintiff complains about the general objections and

24    Mr. Helfand's response is, there are no general objections.

25    What's the issue?  Sort of (indiscernible), actually, but --

```
 1            MR. KILPATRICK:  Yeah --

 2            THE COURT:  What --

 3            MR. KILPATRICK:  Your Honor --

 4            THE COURT:  -- the issue with the general objection

 5   that I don't have in front of me?  Are there general objections

 6   or not?

 7            MR. KILPATRICK:  Your Honor, we walked through those.

 8   As I told Mr. Helfand, I'm not -- that's not an issue anymore.

 9   We --

10            THE COURT:  Here's my question.  Are there general

11   objections?  Yes or no.

12            MR. KILPATRICK:  There were ones that I believe were

13   general objections and Mr. Helfand and I discussed those.  I am

14   withdrawing that part of the discovery letter, Your Honor.

15            THE COURT:  Okay.  Before we go any further, are

16   there anything else that's withdrawn?  That's why I asked you

17   up front what we -- what we're going to go -- I don't want to

18   waste your time or my time on this.  Are there any other issues

19   that are resolved or do we need to go through each one of

20   these?

21            MR. KILPATRICK:  Yes, there were several that were

22   resolved and really the only things that it comes down to now,

23   there's a request for production -- well, in the initial

24   disclosures for insurance agreements, you know, insurance and

25   indemnity agreements.  Mr. Helfand --
```

```
 1              THE COURT:  Here, let's do this.  In the future, if
 2    we have any discovery disputes, I want to -- want a joint
 3    letter.  Here's the issue and here's each side's positions.  In
 4    the future.  Okay.  Tell me, Mr. Kilpatrick.  Let's walk
 5    through the issues.  Issue one is this question about the
 6    insurance agreements which really comes down to, as I
 7    understand it, it's really request for production number 20
 8    which asks for all documents reflecting liability insurance.
 9    That's what we're talking about, right?
10              MR. KILPATRICK:  That's correct.
11              THE COURT:  Okay.  And Mr. Helfand's response, in
12    essence, is hey, so the answer is none but the explanation in
13    the letter is, hey, the city's self-insured under program
14    administered by the Texas Municipal League and what else do you
15    -- what else do you want or need?
16              MR. KILPATRICK:  Well, there is -- the Texas
17    Municipal League has an insurance program that several
18    municipalities in a jurisdiction throughout the state of Texas
19    participate in that's a risk pool and there are written
20    agreements that are relevant to that risk pool and are
21    insurance agreements.  And really, Mr. Helfand's point on that
22    issue is that if the Texas Municipal League in "the insurance
23    business" and I have not seen any authority that supports that.
24    There have been cases involving disputes between municipalities
25    and the Texas Municipal League where the Municipal League was
```

1    saying that they have sovereign immunity and that -- the Courts

2    have rejected that and said no, the contract's between the

3    insured and the Texas Municipal League, so its sovereign

4    immunity is waived.  So that's a separate issue.  I think --

5                THE COURT: Let me say this.  One, obviously insurance

6    agreements need to be produced.  Two, at the same time, we

7    haven't even had a motion to dismiss in this case, so I'm not

8    sure what the -- three, the issue of whether the Texas

9    Municipal League risk pool documentation should be produced or

10   not produced, I'm confident this is not the first time this has

11   ever happened in the history of the universe.

12                Mr. Helfand and Mr. Kilpatrick, there's got to be

13   some authority one way or the other.  This is not a novel

14   issue.

15                MR. HELFAND:  There is, Judge.  The problem is,

16   there's nothing published, but I'm going to say about 15 years

17   ago, Magistrate Judge Johnson addressed this very question.

18   And again, she pointed to -- I was trying to -- I have to find

19   the case, obviously, to find it for ECF where she wrote a

20   written opinion, but she pointed to Chapter 2259 of the Texas

21   Government Code because 26(a)(1)(A)(4) specifically says an

22   insurance agreement in which an insurance business may be

23   liable to satisfy and the comments, I should point out that,

24   Your Honor (indiscernible), but the Court may need look no

25   further than the comments to Rule 26(a)(1)(A) because the

1    comments specifically say this does not include agreements

2    relating to self-insurance and I'll find that for you.  I'm

3    looking at the --

4           THE COURT:  Well, let me ask you this.  I guess,

5    obviously, before I'd require this to be produced or before I

6    would issue any sort of ruling one way or the other, this isn't

7    just a simple, hey, the third-party insurance company produced

8    the darn document, right?  That's where the -- there is a, it

9    seems to me, legitimate disputed or question here whether or

10   not the documentation should be produced.

11          I'm not going to require anything be produced before

12   I give each side an opportunity to put in writing the positions

13   on this.  My only question is, does it make sense to do this

14   now or does it make sense to wait until we see what happens on

15   the motion to dismiss.  If the motion to dismiss is denied,

16   then tee up this as a discovery issue to let you all tell me

17   what the law is and issue an opinion.  And if not, then it

18   doesn't -- it never becomes relevant.

19          MR. HELFAND:  That was my point to Mr. Kilpatrick

20   was, if we oughtn't take up Your Honor's time let alone the

21   parties' time fighting over this right now unless and until the

22   Court determines that there's a basis to move forward.

23          THE COURT:  What about that, Mr. Kilpatrick?  Because

24   I think in order to decide whether or not Mr. Helfand is right

25   or wrong, I think I'd require -- I've got to have writing

1   briefing on the issue.  I don't want to just willy-nilly say

2   hey, I'm going to order that one way or the other.

3              MR. KILPATRICK:  Fair enough, Judge and I've actually

4   already started researching this issue, and again, I haven't

5   found anything on point that would support Mr. Helfand's

6   argument, but I'm happy to submit to the Court briefing on

7   that.  I do agree with Your Honor that it's not -- well, I

8   guess I think we're entitled to it, but I don't think it's the

9   most urgent thing in the case.

10             THE COURT:  Let's do this.  Let's put this in the

11  hold in abeyance category.

12             MR. KILPATRICK:  Okay.

13             THE COURT:  If a motion to dismiss is denied, then

14  I'm going to put the onus on you, Mr. Kilpatrick, to sort of

15  rewrite or -- you know, you talk to Mr. Helfand and submit

16  short letter briefs.  I'm not talking about long, voluminous

17  pages, but at least what I would need to say yes or no one way,

18  and if the motion to dismiss is granted, obviously, it becomes

19  a moot issue.

20             MR. KILPATRICK:  Okay.

21             THE COURT:  Okay, next issue.

22             MR. KILPATRICK:  Okay.  So next issue was -- let's

23  see.  The interrogatories asking about the specific ordinances.

24             THE COURT:  Give me a number.

25             MR. KILPATRICK:  Okay.  Let me -- apologize.  I have

1    to switch my screen here.

2              THE COURT:  I think you're going to say two, but --

3              MR. KILPATRICK:  It is -- well, bear with me.  I

4    apologize, Your Honor.  Okay.  If you look in Exhibit A to the

5    joint letter, it has the interrogatories that were in dispute

6    and most of which have been resolved.  And the --

7              THE COURT:  And let me just --

8              MR. KILPATRICK:  Interrogatory No. 2 --

9              THE COURT:  -- future -- hold on real quick.  For

10   future reference, do -- I really do want that letter because

11   the way that the letter was crafted to me, I mean, you guys

12   submitted it 11:20 last night.  I read everything.  I stayed

13   up.  And what I was told was the only interrogatories that have

14   been resolved were 11 and 24.  The only requests for production

15   were 8, 13, and 15.  So I've read everything else and thought

16   about everything else, which I'm now getting the feeling was a

17   total waste of time.

18             MR. HELFAND:  Well, Judge, I think -- I do want to

19   say what I asked Mr. Kilpatrick at the end of our conference on

20   Wednesday, which was recorded, was rewrite the letter with the

21   outstanding disputes we've identified.  What he did instead

22   was, he said here is the same letter with the exception of the

23   following things.  But frankly, a lot of the stuff that we're

24   talking about now, he and I did not discuss or we agreed was

25   resolved.  So I -- we have the same problem.

1          I'm happy to work through it, but if we're going to

2     interrogatories now, in our conference -- again, which we

3     recorded -- Mr. Kilpatrick told me he was satisfied with all

4     the -- with interrogatory responses except those that related

5     to phone calls and then I subsequently told him that I found

6     out that the city's phones are -- that they're individual city

7     phone for each person and therefore those phone records are 100

8     percent public record and I'm getting those and providing them

9     to him.  So I don't --

10          THE COURT:  Okay --

11          MR. HELFAND:  -- but I'm happy to address any

12    interrogatory.

13          THE COURT:  For future reference, I guess, if we have

14    future disputes in the case it's going to be easy because it's

15    going to have here's the interrogatory, here's the objection.

16    Here's the plaintiffs' position, here's the defendant's

17    position.  And that are -- because my whole goal is to try to

18    avoid exactly what we're doing now.  But okay, let's walk

19    through this.  Which number are we talking about, Mr.

20    Kilpatrick?

21          MR. KILPATRICK:  Okay, Interrogatory No. 2, Your

22    Honor.

23          THE COURT:  Okay, so No. 2, here's the way I view

24    this.  Obviously -- well, let me make sure I understand it.

25    You want to know, under No. 2, hey, if the city thinks the

1    property isn't in compliance with various ordinance codes, what

2    are those ordinance and codes.  And the response, as I read it,

3    is basically, hey, I can't tell you right now what is in

4    violation because the city doesn't know right now what's in

5    violation, but the city says they've done some previous

6    inspections, information, and then they refer you to these

7    documents, once again, that I don't have, Documents 1, 2, 3,

8    109, and 111 that they claim provides the information on them.

9              What's wrong with that?

10             MR. KILPATRICK:  Well, Your Honor, this is -- really

11    goes to the heart of the issue in this case is we never got any

12    clear direction from the city about what statute --- or what

13    ordinance is -- the property's not in compliance with and what

14    is needed to cure that.  So when I drafted interrogatories, I

15    wanted to narrow this down to, okay, you're claiming that this

16    ordinance is violated and then I go on another interrogatory

17    said that work was needed to cure any --

18             THE COURT:  I absolutely think the plaintiffs are

19    entitled to know, if there's been inspections, they have found

20    the property not in compliance with codes, regulations, rules,

21    or ordinances.  The plaintiff is absolutely entitled to know

22    what code, what regulation, what ordinance that is.  My

23    assumption, and I might be wrong because I don't have it in

24    front of me, my assumption is that's referenced in documents 1,

25    2, 3, 109, 111.

```
 1              If I'm wrong on that, obviously -- I guess what I'm
 2    saying is this, and I think this just seems so obvious.  The
 3    city is not obligated to say right now, we think you're in
 4    violation of these ordinances, because they have no idea right
 5    now, but if there's past inspections that have found that
 6    there've been alleged violations of rule, ordinances, or
 7    regulations, the city should identify them or refer to
 8    documents that contain that information in it.
 9              Right?  That's all you want, Mr. Kilpatrick.
10              MR. KILPATRICK:  Right.  That's exactly right.
11              THE COURT:  Okay.
12              MR. HELFAND:  Can I speak to that, Judge?
13              THE COURT:  Sure.
14              MR. HELFAND:  So this goes back to what we briefly
15    touched on on Monday, and it goes to the question of standing.
16    So again, the way any city's ordinance enforcement works is
17    when it comes to occupancy or in this case permits to do
18    things, is somebody comes to the city and they say, I want a
19    permit.  And the city says, well, let's see what you've got
20    here and maybe we have to do an inspection which
21    (indiscernible) they have to do.
22              And they go out and they say, in this case, the
23    documents that you're not seeing are inspection report from an
24    independent company called Bureau Veritas that supported the
25    conditions of the property that the plaintiff wants to occupy
```

1    for short term rental.  And Bureau Veritas suspended their

2    inspection when they found so many violations that they said

3    there's no sense in us continuing to charge anybody for our

4    work, and obviously, they're a third party, so that's what they

5    did, but we don't control that.

6         The city does like -- again, this goes to the

7    standing question and I mentioned this Monday.  I told Mr.

8    Kilpatrick and two other lawyers have told the plaintiff before

9    Mr. Kilpatrick, go hire somebody to do an inspection and

10   determine what's necessary to bring the premises in compliance,

11   do those things, and then bring that to the city and they will

12   do an inspection.  But what we can't do is tell -- go out and

13   give advice to a private landowner that here's what we think

14   you need to do to come in compliance.

15        The documents identified the code provisions and they

16   identify the problem.  Beyond that, I -- we can't prescribe to

17   the plaintiff what they need to do to make their property

18   compliant and the lawsuit is not over that, because again,

19   there's no obligation for the city to do that.  The lawsuit is

20   supposedly the plaintiff claims he's in compliance or his

21   company is compliant and the city won't issue him a permit.

22   That's not true, but that's his contention.

23        THE COURT:  I understand.  I just want to go through

24   the interrogatories one by one, and it seems to me an -- on

25   this interrogatory that if the answer is, hey, they're a --

1     exactly what you just said, I mean, hey, we had a company come

2     out and look at it.  They identified a bunch of problems.

3     Those problems are identified in these documents.  There may be

4     more, but the inspection was stopped.  What -- and that's all -

5     - I'm not sure what else possibly the defendant needs to say

6     more than that, Mr. Kilpatrick.  (indiscernible).

7             MR. KILPATRICK:  Your Honor, if I may respond.  The

8     document they're referring to, the Bureau Veritas inspection,

9     is partly fair notice of what is not in compliance.  All it

10    says is oh, went and observed property and saw plumbing not up

11    to code.  So I've asked, okay, then let's get into this.  And

12    obviously, my client has been dealing with this for a long time

13    and getting no straight answers from the city.  But the -- they

14    won't say which code applies because one issue is, is our

15    property grandfathered or not.  Our position is it is

16    grandfathered.

17            Their position is that there was a change in

18    occupancy type because we went from a regular residential

19    rental to short-term rental, which I think the Texas Supreme

20    Court has said that that's not a change of use in respect to

21    deed restrictions, at least, but the same logic applies here.

22    The -- we have gone above and beyond.  We met with -- we

23    scheduled meetings with the city to try to get clarity and

24    direction on what work is needed.  All we want to do is be in

25    compliance and we've gone down to the city with applications

1    for permits and the defendant actually produced a video that

2    shows ridiculous it was when we went down there.

3           They wouldn't even accept the application, wouldn't

4    tell them what else was needed, and wouldn't accept payment,

5    saying I don't know what you're paying for.  I mean, it's just,

6    you know, he's been roadblocked at every point in time that

7    he's tried to do it.  Now on the subject of their compliance,

8    for where our client -- our client has hired experts to check

9    to make sure that the property is up to code.

10          The -- we paid I think it was approximately $5,000

11   for a fire safety inspection that confirmed that everything's

12   up to code but the city still disagrees with that and they

13   won't say why.

14          MR. HELFAND:  Hang on, Judge.  We're -- this is the

15   problem I run into a lot with Mr. Kilpatrick.  He's missing a

16   lot of conditions and circumstances here.  The plaintiff

17   testified -- plaintiff representative is a single owner of all

18   the business entities, has testified that since Bureau Veritas

19   inspected the property they have done nothing to apply for a

20   permit from the city, nothing.

21          So Mr. Kilpatrick's representation that the city

22   refuses to issue a permit is just, at best, mistaken.  It has

23   nothing to do with grandfathering.  It has nothing to do with

24   which code applies.  All of that has been identified.  It's --

25   and Mr. Kilpatrick said one thing that's correct.  Bureau

1    Veritas said they stopped their inspection because there was

2    noncompliant plumbing and I believe electrical work, done in

3    violation of the plumbing and electrical code, and Bureau

4    Veritas stopped their work.

5           That's as much as we have.  To answer anything more,

6    the city would have to go hire somebody to inspect the premises

7    and advise the plaintiff what they need to do, but after Bureau

8    Veritas provided that report, the city red tagged the facility

9    and told Mr. Placek, the owner that no one could enter it

10   because of plumbing and electrical problems.  And since then,

11   Mr. Placek has testified in deposition, since then, the

12   plaintiffs have done nothing to come back to the city and show

13   compliance.

14          So we've answered as much as we know and I don't

15   agree with the assertion that the city has to opine or go find

16   out what is not currently in compliance.

17          MR. KILPATRICK:  Well --

18          THE COURT:  Hold on (indiscernible).  So as now I

19   understand it, the city hires this company to go out and take a

20   look.  They say that your client, Mr. Kilpatrick, is not

21   compliant with electrical and plumbing work.  What I hear Mr.

22   Helfand saying is, basically the city took that representation

23   -- takes that representation as true and that's sort of the

24   representation we have, that there's noncompliant plumbing and

25   electrical work, period, end of story.  Or I should say, that's

1    the extent of the city's knowledge as based on a third party

2    and what they -- that there's noncompliant plumbing and

3    electrical.

4            MR. KILPATRICK:  Well, if I may, Your Honor, there's

5    some other documents that have been produced for the prior

6    building code official for the city.  The way that they did it,

7    which I think is the appropriate way to do it is they sent a

8    detailed letter to the -- my client's predecessor in interest,

9    basically, that says here's what you -- here are the code

10   violations that we found.  This pipe needs to be replaced with

11   this type pipe, reconnected, and then that will comply with the

12   2009 code.

13           This part needs to be replaced with this part and

14   then that will comply with the code.  What we've gotten from

15   the city in this case is, you are not up to code so we're not -

16   - so we are issuing a zero-occupancy certificate of occupancy,

17   which actually kind of doesn't make sense and it's not even

18   authorized in and of itself.  That's tantamount to revoking the

19   certificate of occupancy, which requires, you know, a notice

20   and a hearing.  So the notion that the city could just sit

21   there and just generalize, like, that our property is not in

22   compliance and then issue a zero-occupancy red tag on the

23   building without providing any guidance is absurd and --

24           THE COURT:  How did they find out --

25           MR. KILPATRICK:  -- (indiscernible) city council

1    before.  That's why they fired the building official.

2         THE COURT:  When you have the third party, comes in

3    and says it's not compliant with electrical and plumbing work,

4    how did they figure out why it's not compliant?

5         MR. HELFAND:  Are you asking me that, Judge?

6         THE COURT:  Yep.

7         MR. HELFAND:  They went in and did -- so they're not

8    -- they're a private company that applies the, whatever code I

9    think applies in this case it's the Southern Standard Building

10   Code, and they go -- they went out and looked.  They did a

11   physical inspection of the premises and then they reported only

12   generally that there was significant electrical and plumbing

13   done in violation of code, and then they stopped.  And so I

14   don't know what else to do and the idea that somehow -- the

15   city can't provide any information more than it has.

16        THE COURT:  So in effect what -- here's what I hear.

17   Mr. Helfand's saying is a third party that goes out and says

18   they're noncompliant with electrical and plumbing work.  If I

19   ask Mr. Helfand, tell me all the reasons why it's noncompliant,

20   his answer is, I don't know.  We relied on a third party to

21   tells me that it's noncompliant.

22        MR. HELFAND:  Judge, can I show you the -- if I could

23   share my screen, we can all -- I'll show you the document.

24   Here we are.  This is the Bureau Veritas report on the

25   property.

1          MR. KILPATRICK:  And one important fact I want to
2  point out, Your Honor.  This property was built in the '80s and
3  the basis of this report is that they're saying we have to
4  bring everything up to current code because we're changing from
5  a residential unit to a short-term rental, which is a legal
6  issue and our position is that we do not have to bring that to
7  current code.  That's grandfathered.  And really, this just
8  provides more perspective here, Your Honor.

9          In February 2021 when that massive freeze, you know,
10  froze the whole state of Texas, basically, it burst the
11  plumbing in this building, along with every other building on
12  the block and throughout the city and these were emergency
13  plumbing repairs that were done and then once the city learned
14  there was a short-term rental unit -- or short-term rental
15  units on the top two floors, that's when they said, on, wait,
16  actually this plumbing isn't permitted and you're going to have
17  to tear it all out and bring everything up to code.

18          I mean, it was clearly not the -- for the reasons
19  that they're stating that, you know --

20          THE COURT:  Okay.  Let me ask this.  I understand the
21  issue.  How does this make a difference, and I haven't -- to
22  the motion to dismiss.  In other words, if the case proceeds,
23  clearly Mr. Kilpatrick's entitled to go take the deposition,
24  the (indiscernible) report and say tell me each and every
25  reason why, you know, you say that you could tell the water

1   lines need to be done by code.  Why wasn't it done by code.

2   Give me all the reasons.

3          I guess my question is, why is that relevant at this

4   stage?

5          MR. KILPATRICK:  Well, Your Honor --

6          THE COURT:  Let me put it this way.  Why isn't it

7   sufficient at this stage to --- and I'm not saying I know one

8   way or the other -- if Mr. Helfand's response is, hey, we hired

9   this company.  They said it wasn't up to code and that -- for a

10  whole host of reasons, that's what we know.

11         MR. KILPATRICK:  Well, okay.  Fair question, Your

12  Honor, and the reason it's important at this state is part of

13  the city's argument in its motion to dismiss is that we failed

14  -- that we didn't apply for permits.  Well, we did apply for

15  permits.  Our plumbing -- our electrical permit actually was

16  approved and is permitted.  So that was not -- I mean, I don't

17  (indiscernible) for making that statement, but so that wasn't

18  correct, but the electrical has been approved and permitted.

19         The plumbing has not and we applied for permits.

20  They put the permit on hold, whatever that means.  They won't

21  deny it or reject it.  And we got another -- it's just the

22  vague generalities here that -- I mean, it's clearly why this

23  dispute arose.  Now, here's what I would actually propose going

24  forward.

25         THE COURT:  And I just want to say, I hear you loud

1    and clear.  Clearly is vague generalities.  I don't think

2    anyone would disagree with that.  I guess my question is, why

3    does it make a difference for the motion to dismiss whether you

4    know it was Section 1, 2, 6, 7, 8, or 9 or hey, the city hired

5    a company and they said there's a whole host of violations?

6         MR. KILPATRICK:  (indiscernible) a permit that we

7    needed that we don't have.  We don't know what they want us to

8    apply for.  And one thing we haven't brought up yet that I

9    think is an important detail to this, the city has taken a

10   position also that short-term rentals are subject to hotel and

11   motel regulations.

12        In Mr. Helfand's letter that was, I guess,

13   prerequisite to filing a motion to dismiss in this Court

14   pursuant to the Court's procedures, he specifically stated

15   that, that we have to comply with hotel regulations and that's

16   something that the current mayor has been advocating for

17   because he strongly opposes short-term rentals and that's just

18   a misapplication of the law in and of itself.  So why would we

19   have to go apply for a hotel permit when we don't think we're a

20   hotel and we've never used it as a hotel?

21        THE COURT:  Okay, I think we're getting off base

22        MR. HELFAND:  We're so far afield of the issue and --

23        THE COURT:  We are and I want to -- and I don't want

24   to go down that path.

25        MR. KILPATRICK:  Okay, okay.

```
 1              THE COURT:  Here's what --

 2              MR. HELFAND:  No one has ever told the plaintiff that

 3    he has to be a hotel.

 4              THE COURT:  Here's what we're going to do on number

 5    two.  On number two.  The defendant -- if the defendant is

 6    aware of specific provision, code provision, ordinance

 7    provisions that investigations or inspections have unveiled

 8    that were -- unearthed that were in violation, they need to --

 9    the city needs to state that.

10              If the city is, as Mr. Helfand is saying, relying on

11    that a report that says there are multiple code violations, I'm

12    not going to require at this point in time to go talk to the

13    inspectors, have the inspectors list each and every provision

14    that they think is in violation.  And I think that gets us

15    where we need to do, at least at this stage, with obviously, as

16    I say, more full discovery in the event that the motion to

17    dismiss is not (indiscernible) will be permitted.

18              Okay, next issue.

19              MR. KILPATRICK:  Okay.  Well, that same issue covers

20    the other interrogatories at issue about the code violations

21    alleged by the city and with the food truck, for -- so

22    Interrogatory No. 3 and we state if you contend that the

23    location of the food truck on the property before it was

24    removed on October 11th violated any ordinance, code, rule,

25    please identify and describe in detail each and every reason.
```

1          But that's different, because they're not saying that

2    they're relying on a third-party inspection report about

3    whether the food truck was in violation of building codes.

4    This, they're saying it was removed from the property because

5    it violated certain ordinances --

6          THE COURT:  You got to remember, I wanted to become

7    as knowledgeable as I can about this case.  I just don't have

8    knowledge.  All I know from reading the interrogatory is

9    apparently there's some justice of the peace decision that

10   found that the food truck violated ordinances, codes, and

11   rules.

12         MR. KILPATRICK:  Right.  And so, Your Honor, just to

13   bring it all in full circle, the city filed a motion to dismiss

14   the claims based upon the food truck seizure saying that we

15   failed to exhaust our administrative remedies by requesting a

16   tow hearing.  Well, we did request -- so we have requested a

17   tow hearing and had the tow hearing conducted and have appealed

18   the decision of that and if the -- the tow hearings, in all

19   candor, this was my first to handle, but it's a unique animal,

20   I guess you would say, in that it's not -- it's actually an

21   administrative -- it's considered an administrative proceeding

22   in the JP court  and then once you appeal it to the county

23   court, it becomes civil matter and that -- so we have ripened

24   that (indiscernible) by requesting a tow hearing and really,

25   that part of the  city's motion to dismiss is now moot.

```
 1              MR. HELFAND:  (indiscernible).

 2              THE COURT:  I'm not deciding the motion to dismiss

 3    today.

 4              MR. HELFAND:  (indiscernible).

 5              THE COURT:  I'm not deciding the motion to dismiss.

 6         MR. KILPATRICK:  I'm --

 7              THE COURT:  -- talk about the merits of the case or

 8    demerits of the case.

 9              MR. HELFAND:  Here's the simple --

10              THE COURT: I'm just looking at this interrogatory,

11    looking at this interrogatory, I just don't -- help me out, Mr.

12    Kilpatrick.  What do you want?

13              MR. HELFAND:  Judge, could I speak for -- could I

14    speak for one second, Your Honor?

15              THE COURT:  Sure.

16              MR. HELFAND:  My answer is consistent with Rule

17    33(d).  Again, we didn't discuss this on Wednesday because Mr.

18    Kilpatrick didn't tell me this was still an issue.  But my

19    answer is consistent with Rule 33(d), and again, let me share

20    my screen and I'll show you, the magistrate -- justice of the

21    peace made substantial findings of fact and conclusions of law,

22    so the question is, what is the city's position regarding

23    towing the vehicle, and consistent with Rule 33(d), I simply

24    said, see the -- I'm sorry, that's the wrong one.

25              See the justice of the peace findings of fact and
```

 1    conclusions of law which were exactly the city's contentions in

 2    the tow hearing, regardless of whether Mr. Kilpatrick respects

 3    or disrespects the justice of the peace's work, she made

 4    findings of fact 1 through 29, I believe.  She struck some she

 5    didn't agree with and then she made conclusions of law 1

 6    through 8. So that's my answer under 33(d).  There is a

 7    document that explains the answer to that question.  What else

 8    could I say?

 9            THE COURT:  Mr. Kilpatrick?

10            MR. KILPATRICK:  Well, Your Honor, it's not a final

11    judgment.  It's on appeal and it's a de novo --

12            MR. HELFAND:  I'm not saying it's a judgment --

13            THE COURT:  Hold on, hold on, hold on.  Let Mr.

14    Kilpatrick answer.

15            MR. KILPATRICK:  So the findings in that and also the

16    authority I found shows it's not even res judicata or law of

17    the case on any issue.  It's -- whatever the Court found, that

18    is completely irrelevant at this point and the city hasn't

19    stated that -- so that's fine.  If the city wants to stick with

20    whatever was in there, I guess it could still do that, but my

21    point in trying to resolve this is it's not, first of all, a

22    final judgment in the findings --

23            THE COURT:  Let me ask you this.  I'm not saying it's

24    a final judgment or not, but the question is, do you contend

25    the location of food truck violated any ordinance, code, rule.

1   Mr. Helfand refers to the document, says take a look at this

2   document, findings of fact, conclusions of law.  It might be

3   wrong.  It might be right.  That's the city's position and I'm

4   not going to require any additional information provided on

5   Interrogatory No. 3.  That answer in my view is sufficient.

6           Okay, next --

7           MR. KILPATRICK:  Fair enough, Judge.  Okay.  Those

8   two are really the main other --

9           THE COURT:  What is the next --

10          MR. KILPATRICK:  -- unresolved --

11          THE COURT:  What is the next --

12          MR. KILPATRICK:  Move on to the next.

13          THE COURT:  Okay, so no more interrogatories, right?

14          MR. KILPATRICK:  That's correct, Your Honor.

15          THE COURT:  Okay.  Request for production.  Which --

16  on Exhibit B which numbers are we fighting about?

17          MR. KILPATRICK:  We have -- well, the -- okay.  So

18  really the only other issues at this point we have reached

19  agreements on --

20          THE COURT:  Here's my question.  What request for

21  production are we fighting about, do I need to decide an issue?

22  If there is one, let me know a number.  If there are none, tell

23  me none.

24          MR. KILPATRICK:  I don't think at this point there

25  are (indiscernible) requests for production other than the

1   insurance contacts, so --

2            THE COURT:  Okay.  And we've already discussed that.

3   Okay, so no additional requests for production issues.  And

4   then the only questions are, as I understand it, questions

5   about what happened at the deposition.  Am I right on that?

6            MR. KILPATRICK:  Yes, Your Honor and --

7            THE COURT:  Tell me --

8            MR. KILPATRICK:  No, we don't need to go over that, I

9   don't think.  Mr. Helfand has promised me -- you know, there

10  are a few instances where he agrees -- agree with me that he

11  said too much and going forward I just want it to be very clear

12  because I don't want us to have to come back to the Court

13  again.  We have two more -- or we have to reschedule these

14  depositions that we had already scheduled for the last week of

15  May.  So if we can just both be on the same page that we're not

16  going to make speaking objections and follow those rules,

17  that's enough assurance for me that I need for now.  I don't

18  need the Court to order anything.

19            THE COURT:  Okay.  Let me just offer a little piece

20  of, we'll call it an advisory opinion because I see Mr. Helfand

21  is chomping at the bit and obviously, I have a feeling he's

22  going to claim he's not making speaking objections.  Look.  A

23  defendant or a plaintiff, either party has the right to make an

24  objection on the record and you should be able to identify what

25  the objection is, with enough clarity what it is, you know, if

```
1    it's hey, it calls for speculation because, I'm fine with that.
2              If it's been asked and answered, that does not mean
3    that a party either plaintiff of defendant is -- can coach the
4    witness and go off ad nauseam on a long diatribe about it.
5    It's a short, concise objection and move on.  And I'm confident
6    with two great lawyers here that that should not be an issue.
7              MR. HELFAND:  Well, that's -- we have two great
8    lawyers, so I'm here too, Judge.  So --
9              THE COURT:  For the record, that is correct.  I
10   understand that.  I was referring to Mr. Pfeiffer and Mr.
11   Kilpatrick.
12             MR. HELFAND:  I certainly (indiscernible).  to be
13   clear, Judge, I want to correct this -- correct that statement.
14   I did not agree with him that I did anything inappropriate.
15   What I have told Mr. Kilpatrick and just so it's clear is, when
16   I make an objection, if -- he can let the witness answer or he
17   can rephrase his question, but what he should not do is turn to
18   me and argue with me about the objection.  Because what he
19   claims are speaking objections are when he argues with me about
20   the objection and then says, you shouldn't respond.
21             I think we can all take the Court's guidance and
22   that's what I told Mr. Kilpatrick.  All my objections, the
23   Court can see, follow what Your Honor just said.  But I think
24   we've got it.  Mr. Kilpatrick and I certainly committed to
25   working together to try to make the depositions work, but I
```

1   just want to be clear.  I don't want to leave the statement,

2   Mr. Helfand agreed that he's doing it wrong and has agreed to

3   do it right.  I do not agree I'm doing it wrong.  What I

4   suggest to Mr. Kilpatrick is don't engage me in argument.  Just

5   move on and then we won't have any problems.

6          THE COURT:  Understood.  Let me just say this and

7   this will be sort of the last word, I think, on the subject.  I

8   just -- in a letter that was given there were four references

9   parts in the deposition to look at.  I looked at those.  I

10  would've read the whole damn thing but I didn't have time since

11  it got submitted so late last night.

12         The one exchange is on Page 55 and 56 that is

13  objected to in the letter where, you know, "So you contacted

14  the plumbing company, told them there was no investigation, but

15  had no idea why you were contacting them."  Mr. Helfand

16  answers, "I'm sorry, that calls for speculation as to why they

17  were calling."  And then Mr. Kilpatrick says, "No, stop the

18  speaking objections."

19         Just based on that, exchange, I don't view that as a

20  speaking objection, meaning that statement that that calls for

21  speculation as to why they were calling, to me that's

22  (indiscernible).  Anything longer than that, any detail, in

23  effect trying to coach the witness, is clearly speaking

24  objections.  So as I say, you know, all three of you are well

25  aware, no speaking objections.  Tell what the objection is in

```
 1    sufficient short clarity to make the record and move on.

 2              MR. KILPATRICK:  Understood, Your Honor.

 3              THE COURT:  Okay.  And so anything else we need to

 4    address on the deposition front at this current time?

 5              MR. KILPATRICK:  Well, the last thing that -- and

 6    really, I left it blank in the letter because we didn't discuss

 7    a date by which Mr. Helfand would give dates for the witness

 8    depositions for Walter Gant, (indiscernible) and Carl Joiner,

 9    but I just wanted to have a quick date so that we can keep

10    things moving along to reset --

11              THE COURT:  I think actually Mr. Helfand has every

12    incentive to provide those dates because we're not going to

13    consider the motion to dismiss until those are done, so --

14              MR. HELFAND:  The only thing is, I'm not representing

15    Mr. Gant.  The theory was that Mr. Gant -- here's what

16    happened, Judge.  I mentioned it Monday.  The end of Mr. Gant's

17    deposition, Mr. Kilpatrick, I can see, finished his outline and

18    then he says, well, since I need more documents and the answers

19    to interrogatories, I'm going to reset Mr. Gant's deposition.

20    That's not appropriate.  I told him, you need to come prepared

21    to answer questions and don't start a deposition until you

22    finish.

23              But let me make this accommodation.  I'll offer to

24    put Mr. Gant up for one more hour by agreement.  Mr. Kilpatrick

25    can ask any remaining questions once I -- I'm going to get an
```

```
1    answer.  I'll tell Mr. Kilpatrick what I'm telling the Court
2    now, which is the city has no more information (indiscernible)
3    Interrogatory No. 2 than it's already provided but I'll put Mr.
4    Gant up for another hour of deposition and I will provide dates
5    for Mayor Joiner and Mr. Schultz because Your Honor is right, I
6    want to get those done.  I'll provide those as soon as I get
7    them from the witnesses.  I would imagine no later than Tuesday
8    of next week -- to provide dates.
9            THE COURT:  Well, if you need my help in scheduling
10   dates for depositions, we got problems.  But so let's do this.
11   You all confer about those deposition dates.  You conduct the
12   depositions and then I guess my request is you all get
13   together.
14           If you all then by agreement figure out a date for a
15   response and a reply, if it's by agreement, I'm going to be
16   good to go.  So then if you just submit, you know -- actually,
17   you send an email to my case manager, hey, we've -- you know,
18   we've now done the -- all you're doing is saying, we've agreed
19   to a response date and a reply date.  Here the dates are.  You
20   send that email.  I'll enter a minute entry that day.  And then
21   we can get that going.  If there's any issue, obviously, submit
22   a letter and we'll get on the horn asap.
23           MR. HELFAND:  We can do that, Judge.  The one thing
24   I'll warn the Court, Mr. Kilpatrick and I talked about, I think
25   in all fairness to the plaintiffs, is in light of the fact that
```

1    I've now taken depositions of the plaintiff representative, Mr.

2    Placek -- well, actually, I took Mr. Placek's deposition

3    individually, but I got a lot of information that supports the

4    city's position, so what we'll actually come up with, if it's

5    okay with the Court is a (indiscernible) amend the motion.  Mr.

6    Kilpatrick can respond to the amended motion rather than going

7    back and forth --

8         THE COURT:  Absolutely.  Yeah, I want to --

9    obviously, I don't want to have supplements or have fights

10   later on, what is or not.  That makes sense, an amended motion

11   to dismiss.  A response date, a reply date, and as I said, if

12   you all come to agreements on those dates, whatever they are,

13   I'm going to agree.  If there's an issue, I'll address it, and

14   then we can get that teed up.

15        And so just so we're clear, really, although -- and I

16   appreciate your patience and your time, we really only

17   addressed three issues, which is one, the insurance issue.  We

18   basically are holding that in abeyance.  If we have to address

19   it and -- I want to make sure we get it right.  There's no

20   reason to spend the time, your time, your efforts, your

21   clients' money, and the Court's resources at this time, so

22   that's all abeyance.

23        On request number -- Interrogatory No. 2, I'm going

24   to make it clear that the defendant needs to state, if the

25   defendant is aware of specific code provisions -- provisions,

1    ordinances, sections the plaintiff has not been in compliance

2    with based on inspections or evaluations.  They need to state

3    it.  If all they're aware of, that they were based on a third

4    party, that the plaintiff was not complying with electrical and

5    plumbing work ordinances, then they can state that as well.

6              And then the third issue was on interrogatory number

7    -- actually which number was that?

8              MR. KILPATRICK:  Three, Your Honor.

9              THE COURT:  On Interrogatory No. 3, that I have found

10   that the response was sufficient and I was not going to require

11   any further response on Interrogatory No. 3.  So those were the

12   -- is everyone on board with those rulings?

13             MR. KILPATRICK:  Yes, Your Honor.

14             THE COURT:  Okay.  So I'm going to make sure the

15   minute entry's simply going to say we addressed various issues

16   the rulings are as stated on the record.  And then we'll get

17   the motion to dismiss teed up.  We'll get rolling on that.

18   Take the rest of the day off.

19             MR. HELFAND:  if you put that in the order, Judge,

20   we'd appreciate it.

21             MR. KILPATRICK:  Yeah --

22             THE COURT:  If I could --

23             MR. KILPATRICK:  Court ordered.

24             THE COURT:  I guess two things I feel like saying.

25   You know, one, take the rest of the day off and then two, you

1   know, try to get Mr. Pfeiffer out of the witness protection

2   program and get those blinds fixed in his office, you know.

3           MR. PFEIFFER:  You can see me a little be now, Your

4   Honor.  I think it's when the sun changed during this hearing.

5           MR. HELFAND:  It's probably easier for us to move the

6   sun than to fix the blinds.

7           THE COURT:  I was going to say, I'm not sure if

8   that's good or bad but I'll stay -- I'll refrain from making

9   any comment there.  In all seriousness, anything else we need

10  to address?

11          MR. KILPATRICK:  No, that's it, Your Honor, and I

12  appreciate your time.  I guess one thing just to make sure

13  we're all on the same page is Mr. Helfand's going to provide

14  dates next week.

15          THE COURT:  As quickly as possible, hopefully things

16  (indiscernible) by next Tuesday.  If he gets them earlier or

17  earlier, if for any reason there's a delay, just let Mr.

18  Kilpatrick know.  Work together and get those scheduled and

19  we're on our way.

20          Thanks a bunch.  Have a great day, great weekend.

21  Hit 'em long; hit 'em straight.  We're off the record.  Thanks.

22          MR. KILPATRICK:  Thank you, Judge.  Thank you or your

23  time.

24      (Hearing adjourned at 10:48 AM)

25                        * * * * *

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    [signature]

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  June 10, 2022