United States District Court
Southern District of Texas
**ENTERED**
November 15, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| T&W HOLDING CO., LLC, *et al.*, | § § § § § § § § § § | |
| Plaintiffs. | | |
| V. | | CIVIL ACTION NO. 3:22-cv-00007 |
| CITY OF KEMAH, TEXAS, | | |
| Defendant. | | |

## **OPINION AND ORDER**

Before me is a discovery dispute that requires me to determine whether Defendant City of Kemah ("Kemah") has waived the attorney–client privilege by producing a series of attorney–client privileged documents during the discovery process. The specific documents at issue are Bates-stamped KEMAH 000051–000054; KEMAH 000077–000078; KEMAH 000286–000287; and KEMAH 000290–000294.

## **FACTUAL BACKGROUND**

The relevant facts are not in dispute. On April 5, 2022, Kemah provided its Initial Disclosures to Plaintiffs in accordance with Federal Rule of Civil Procedure 26. That rule provides, in part, that a party must, without awaiting a discovery request, provide to the other parties in the case "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." FED. R. CIV. P. 26(a)(1)(A)(ii). To comply with its discovery obligations, Kemah produced 252 pages of documents with its Initial Disclosures and also provided a description of those documents that may be used to support its claims and defenses in this matter. Notably, Kemah specifically described in its Initial Disclosures two of the documents it now seeks to claw back—KEMAH

000051–000054 and KEMAH 000077–000078–as documents it might use to support its claims or defenses in this lawsuit:

> Email communications on April 30, 2021 regarding meeting with James Harris, attached and labeled as Kemah 000051-000064 . . . . Email communication from Brandon Shoaf to Carl Joiner, August 22, 2021, regarding August 23, 2021 meeting and materials, attached and labeled as Kemah 000077-000101.

Dkt. 29-2 at 2.

On May 27, 2022, Plaintiffs took the deposition of Walter Gant. At that deposition, Plaintiffs' counsel marked as Exhibit 1 the document Bates-stamped KEMAH 00292–00294. Plaintiffs' counsel then extensively questioned Gant about the document. Kemah's counsel did not object to the use of this document during the deposition.

On June 2, 2022, Kemah produced additional documents (Bates-stamped KEMAH 000253–000712) to Plaintiffs in response to outstanding requests for production.

On June 10, 2022, Kemah provided Plaintiffs with Amended Initial Disclosures. Like the Initial Disclosures provided a few months earlier, the Amended Initial Disclosures also described those documents Kemah might use to support its claims or defenses in this case. Each of the documents Kemah now seeks to claw back are specifically identified and described in the Amended Initial Disclosures.

> Email communications on April 30, 2021 regarding meeting with James Harris, attached and labeled as Kemah 000051-000064 . . . . Email communication from Brandon Shoaf to Carl Joiner, August 22, 2021, regarding August 23, 2021 meeting and materials, attached and labeled as Kemah 000077-000101 . . . . The following were identified and a copy tendered on May 11, 2022 and Defendant City's objections and responses to Plaintiffs' first set of requests for production on May 13, 2022: . . . . E-mails between Carl Joiner, Brandon Shoaf, Dick Gregg and Walter Gant re: Palapa's meeting 8/23/21 in August of 2021 labeled as Kemah 000286-Kemah 000289 . . . E-mails between Walter Gant, Dick Gregg Jr., Terri Gale, Issac Saldana, Terri Gale and

2

>Dick Gregg III re: James Bornscheuer in April of 2021 labeled as Kemah 000290-Kemah 000294.

Dkt. 29-2 at 3–4.

On August 23, 2022, Kemah filed a short letter notifying this Court of a discovery dispute. In that letter, Kemah stated that it "inadvertently produced a limited amount of attorney-client privileged materials in response to Plaintiffs' requests for production." Dkt. 27 at 1. Kemah requests that Plaintiffs be required to return all copies of the attorney–client privileged materials. Plaintiffs resist returning the documents to Kemah, arguing that the city waived the attorney–client privilege by producing the documents to Plaintiffs in this litigation.

## LEGAL STANDARD

"The attorney–client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). It shields from disclosure confidential communications between an attorney and client. *See id*. The purpose of the attorney–client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id*. In federal question cases such as this one, federal common law determines the scope of the attorney–client privilege. *See In re EEOC*, 207 F. App'x 426, 431 (5th Cir. 2006).

Although the attorney–client privilege holds a "venerated position, the privilege is not absolute." *United States v. Edwards*, 303 F.3d 606, 618 (5th Cir. 2002). Under federal law, "voluntary disclosure of information which is inconsistent with the confidential nature of the attorney[–]client relationship waives the privilege." *Alldread v. City of Grenada*, 988 F.2d 1425, 1434 (5th Cir. 1993). Put another way, "[a] party does not intend a communication to remain confidential if he/she voluntarily discloses it to a third party with whom he/she lacks a common legal interest; thus, voluntary disclosure will waive privilege." *Corona v. Chevron Corp.*, No. H-07-3190, 2008 WL 11483069, at *2 (S.D. Tex.

June 18, 2008); *see also Hodges, Grant & Kaufmann v. IRS*, 768 F.2d 719, 721 (5th Cir. 1985) (holding that the disclosure of privileged communications to a third-party generally eliminates the confidentiality of the attorney–client privilege and serves to waive the attorney–client privilege); *Whitaker Chalk Swindle & Sawyer, LLP v. Dart Oil & Gas Corp.*, No. 4:08-CV-684-Y, 2009 WL 464989, at *2 (N.D. Tex. Feb. 23, 2009) ("The attorney-client privilege may also be waived through voluntary disclosure of the privileged information.").

Enacted on September 19, 2008, and put into effect the same day, Federal Rule of Evidence 502(b) governs the waiver of privilege in federal proceedings. Rule 502(b) provides that the disclosure of privileged documents

> does not operate as a waiver in a federal or state proceeding if: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

FED. R. EVID. 502(b). "All three elements set forth in Rule 502(b) must be met to prevent a waiver of privilege." *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, No. 14-60268-CIV, 2015 WL 1565310, at *7 (S.D. Fla. Apr. 8, 2015). "The party claiming that its disclosure was inadvertent bears the burden of proving that each of the three elements of Rule 502(b) has been met." *Williams v. Dist. of Columbia*, 806 F. Supp. 2d 44, 48 (D.D.C. 2011).

With these general principles in mind, I now turn to analyzing whether Kemah's production of attorney–client privileged documents during the discovery process constitutes a waiver of the attorney–client privilege.

## DISCUSSION

The first prong of Rule 502(b) requires Kemah to demonstrate that the disclosure of privileged documents was "inadvertent." FED. R. EVID. 502(b). If Kemah is unable to establish that its production was "inadvertent," Rule 502(b) dictates that Kemah has waived the privilege by disclosing the attorney–client privileged documents to Plaintiffs.

The term "inadvertent" is not defined in Rule 502(b). It is thus up to the courts to shed light on the meaning of "inadvertent." *See In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18MD2836, 2019 WL 6122012, at *6 (E.D. Va. July 16, 2019) ("Though hardly an uncommon term, determining whether a disclosure was 'inadvertent' under Rule 502 proves somewhat difficult."). "Courts considering whether a disclosure of privileged documents is inadvertent [under Rule 502(b)] have taken two different approaches." *Thermoset Corp.*, 2015 WL 1565310, at *8.[1]

As to the first approach, some courts have held that a party's subjective intent is insufficient to establish inadvertent disclosure. "[R]ather, these courts look at several factors to determine whether the 'inadvertent' element has been satisfied, including the total number of documents reviewed, the procedures used to review the documents before production, and the actions of the producing party after discovering that the documents had been produced." *Id.* (citing *United States v. Sensient Colors, Inc.*, No. 07-1275, 2009 WL 2905474, at *3 (D.N.J. Sept. 9, 2009); *Peterson v. Bernardi*, 262 F.R.D. 424, 429–30 (D.N.J. 2009); *Heriot v. Bryne*, 257 F.R.D. 645, 658–60 (N.D. Ill. 2009)).

The second approach is simpler, "essentially asking whether the party intended a privileged or work-product protected document to be produced or whether the production was a mistake." *Coburn Grp., LLC v. Whitecap Advisors LLC*, 640 F. Supp. 2d 1032, 1038 (N.D. Ill. 2009). As one district court observed, this approach "seems to be in line with one of the goals of the drafting committee: to devise a rule to protect the privilege in the face of an innocent mistake." *Amobi v. Dist. of Columbia Dep't of Corr.*, 262 F.R.D. 45, 53 (D.D.C. 2009). The *Amobi*

---

[1] Prior to the enactment of Rule 502(b) in late 2008, many district courts utilized a multi-factor test for determining whether inadvertently produced documents should remain protected as confidential. *See* Fed. R. Evid. 502(b) advisory committee's note. Those factors included "the reasonableness of precautions taken, the time taken to rectify the error, the scope of discovery, the extent of disclosure and the overriding issue of fairness," and "the number of documents to be reviewed." *Id.* The Advisory Committee observed that Rule 502(b) "does not explicitly codify" the prior multi-factor test but allows courts to use those factors as "non-determinative guidelines that vary from case to case." *Id.*

Court also noted that defining inadvertent as mistaken corresponds with the word's dictionary definition: "Of persons, their dispositions, etc.: Not properly attentive or observant; inattentive, negligent, heedless . . . Of actions, etc.: Characterized by want of attention or taking notice[]; hence, unintentional." *Id.* (quoting OXFORD ENGLISH DICTIONARY (2d ed. 1989)).

I wholeheartedly agree with the approach taken by the *Amobi* and *Coburn Group* courts. To determine if the disclosure of the attorney–client privileged documents in this matter was inadvertent, I must ask whether Kemah intended the privileged documents to be produced or whether the production was a mistake. *See Shields v. Boys Town La., Inc.*, No. 15-3243, 2016 WL 9414346, at *2 (E.D. La. May 24, 2016) (equating an inadvertent disclosure to a disclosure made by "mistake," as opposed to a "deliberate and voluntary" disclosure); *Datel Holdings Ltd. v. Microsoft Corp.*, No. C-09-05535, 2011 WL 866993, at *3 (N.D. Cal. Mar. 11, 2011) ("The first inquiry under Rule 502(b)—whether disclosure was inadvertent—is a simple one: did the disclosure occur by mistake or unintentionally?").

There is no doubt that the production of the privileged documents in this case was done deliberately, intentionally, and voluntarily. As a former trial lawyer, I certainly understand that mistakes are inevitable when discovery is extensive and thousands upon thousands of documents are at issue. This is not, however, a situation in which a party accidently produced a few privileged documents as part of a massive document production. As noted, Kemah's first document production consisted of just 252 pages and included two of the documents—KEMAH 000051–000054 and KEMAH 000077–000078—Kemah now asks to be returned. A few months later, Kemah produced an additional batch of 459 pages that included the additional two documents—KEMAH 000286–000287 and KEMAH 000290–000294—it now seeks to claw back. Notably, KEMAH 000286–000287 is the same document as KEMAH 000077–000078. That means that Kemah produced

the same privileged document not once, but twice, further indicating that the production was not an isolated mistake.

But there is more. To me, the best evidence that Kemah's production of the attorney–client privileged material was not simple inadvertence or a mistake is that fact that Kemah described the documents in great detail in its Initial Disclosures and then, again, in its Amended Initial Disclosures. Under Rule 26, Kemah was required to identify those documents it "may use to support its claims or defenses." FED. R. CIV. P. 26(a)(1)(A)(ii). By specifically mentioning the date of each document at issue, referencing the parties who exchanged each document, and providing a short topic summary for each document, Kemah represented that these documents were of particular importance. Kemah's lawyers made a conscious decision to identify certain documents as those they may rely on in this case, and they cannot now run away from that decision claiming mistake or inadvertence.[3]

## CONCLUSION

For the reasons explained above, I conclude that Kemah voluntarily disclosed the privileged attorney–client communications at issue. As mandated by Rule 502(b), the intentional disclosure of those four documents—KEMAH 000051–000054; KEMAH 000077–000078; KEMAH 000286–000287; and KEMAH 000290–000294—waives the privilege.

SIGNED this 15th day of November 2022.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

---

[3] It is also relevant that one of the privileged documents—KEMAH 000292–000294—was actually marked as a deposition exhibit by Plaintiffs' counsel and was extensively referenced at that deposition without any objection by Kemah's counsel.

7