IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| T&W HOLDING COMPANY, LLC;<br>PALAPAS, INC.; and IT'S FIVE<br>O'CLOCK HERE, LLC;<br><br>    *Plaintiffs,*<br><br>v.<br><br>CITY OF KEMAH, TEXAS,<br><br>    *Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 3:22-cv-7 |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S SECOND AMENDED MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)

TO THE HONORABLE ANDREW EDISON,
UNITED STATES MAGISTRATE JUDGE:

COME NOW Plaintiffs and file this their Response In Opposition to Defendant's Second Amended Motion To Dismiss Pursuant To Fed. R. Civ. P. 12(b)(1) and 12(b)(6); and in support would respectfully show the Court as follows:

## SUMMARY OF ARGUMENT

1. Once again, Kemah mischaracterizes Plaintiffs' claims in the third iteration of its motion to dismiss under Rule 12(b)(1). Contrary to what Kemah would have this Court believe, Plaintiffs' takings claims are ***not*** based upon Kemah's denial of an *application* for a structure permit, short-term rental permit,

and certificate of occupancy.[1]  The crux of Plaintiffs' claims is that Kemah deprived Plaintiffs of their ***vested* *rights*** under ***existing* *permits*** by taking them away without just compensation and without due process.  Specifically, Kemah (1) ***took away*** T&W's and Palapas' ***existing*** **permits,** depriving them of *all* vested rights they had to use the 4-story building under ***existing*** **permits** in the same way they have used it for the past 20 years.  And, Kemah physically seized Plaintiff It's Five O'Clock Here's food truck, depriving it of *all* vested rights it held under two ***existing* *variances*** granted by Kemah City Council.  These decisions were final and irreversible.

2.    This case is analogous to *Bowlby,* where the Fifth Circuit distinguished between "*taking away*" and "*denying to issue*" a permit in the context of a takings and due process case:

> [R]esolution of whether a regulation goes too far "depends, in significant part, upon an analysis of the effect the [government's] application of the [ordinances and regulations at issue] had on the value of respondent's property and investment-backed profit expectations," and "[t]hat effect cannot be measured until a final decision is made as to how the regulations will be applied to respondent's property."  *In Bowlby's case, however, her business permits were definitively **taken away**. While it is possible that, had she appealed to the mayor or Board of Alderman, she may have regained her permits, **the actual taking is "irreversible,"** unlike the application of a regulation.*

*Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 223 (5th Cir. 2012).[2]

---

[1] *See* Kemah's 2nd Am. MTD, at ¶ 43.
[2] Citing *Mackey v. Montrym*, 443 U.S. 1, 21, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979) ("When a deprivation is irreversible—as is the case with a license suspension that can at best be shortened but cannot be undone—the requirement of some kind of hearing before a final deprivation takes effect is all the more important."); *Dixon v. Love*, 431 U.S. 105, 113, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977) ("[A] licensee is **not** made entirely whole if his suspension or revocation is later vacated." (emphasis added)).

3. As set forth herein, the Court should deny Kemah's Second Amended Motion To Dismiss for the following reasons:

- Plaintiffs claims are ripe. There is no question "how far" Kemah's regulation goes: (1) Kemah fully revoked Plaintiffs' existing certificate of occupancy without a pre-deprivation notice and hearing; and (2) Kemah seized the food truck from Plaintiffs' property despite previously granting two variances allowing it to be located there. Final decision ripeness exists, therefore, because Kemah's "definitive position on the issue [has] inflict[ed] an actual, concrete injury"[3]—depriving Plaintiffs of *all* use of the 4-story building and food truck without just compensation or due process.

- Under *Knick, Pakdel* and *Bowlby,* Plaintiffs were not required to file an administrative appeal to City Council or the Mayor to ripen their takings and due process claims.[4] Plaintiffs nevertheless exhausted their administrative remedies by applying for permits, meeting with Mayors Gale and Joiner, re-applying for permits multiple times, appealing to City Council, and requesting an administrative "tow hearing."

- Plaintiffs Second Amended Complaint states plausible claims for which relief may be granted. In the unlikely event the Court determines that any claims have not been sufficiently pleaded, however, the Court should grant leave allowing Plaintiffs to file a Third Amended Complaint.

4. For these reasons and as set forth herein, the Court should deny Defendant's Second Amended Motion to Dismiss on all grounds.

---

[3] *Pakdel v. City & Cnty. of San Francisco, California*, 210 L. Ed. 2d 617, 141 S. Ct. 2226, 2230 (2021) ("In this case, there is no question about the city's position: Petitioners must 'execute the lifetime lease' or face an 'enforcement action.' And there is no question that the government's 'definitive position on the issue [has] inflict[ed] an actual, concrete injury' of requiring petitioners to choose between surrendering possession of their property or facing the wrath of the government.").

[4] *See Knick v. Twp. of Scott, Pennsylvania*, 204 L. Ed. 2d 558, 139 S. Ct. 2162 (2019); *see also DLX, Inc. v. Kentucky*, 381 F.3d 511, 517 (6th Cir. 2004) ("administrative exhaustion is explicitly not a component of a federal takings claim"); *Maguire Oil Co. v. City of Houston*, 243 S.W.3d 714, 720 (Tex. App.—Houston [14 Dist.] 2007) ("[A]n [administrative] appeal ... would not be determinative of ripeness."); *see also Palazzolo*, 533 U.S. at 620-22 (once agency discretion is utilized, a claim is ripe, as "[r]ipeness doctrine does not require a landowner to submit applications for their own sake .... [but a landowner] is required to explore development opportunities ... only if there is uncertainty as to the land's permitted use.").

## EVIDENCE SUPPORTING RESPONSE

5.     Plaintiffs rely upon the pleadings on file and the following evidence in support of this Response:

| | |
|---|---|
| Exhibit 1: | Affidavit of Terri Gale |
| Exhibit 2: | Affidavit of Noah Espinoza |
| Exhibit 3: | Affidavit of Shane Hamilton |
| Exhibit 4: | 2004 Building Permit and Change of Use Permit |
| Exhibit 5: | Kemah Resolution No. 2017-11 Granting Variance |
| Exhibit 6: | August 19, 2020 Variance |
| Exhibit 7: | Matthew Placek Deposition Transcript |
| Exhibit 8: | Walter Wilson Deposition Transcript |
| Exhibit 9: | Carl Joiner Deposition Transcript |
| Exhibit 10: | Walter Gant Deposition Transcript |
| Exhibit 11: | Brandon Shoaf Deposition Transcript |
| Exhibit 12: | February 16, 2022 Kemah City Council Meeting Transcript |
| Exhibit 13: | April 23, 2021 Letter from B. Shoaf regarding City Council's final decision on variance application |
| Exhibit 14: | October 11, 2021 email from Shoaf to Mayor and City Council stating reason for food truck tow |
| Exhibit 15 | Kemah Ordinance No. 1186 |

6. Plaintiffs further rely upon the evidence in the record upon which Defendant relies in bringing its motion, which are incorporated herein by reference for all purposes.

## NATURE AND STAGE OF PROCEEDINGS

7. This is a suit to recover damages and other relief under 42 U.S.C. § 1983 arising from the City of Kemah's deprivation of Plaintiffs' constitutional, vested property rights under § 1983. To date, the Court has not entered a scheduling order. The parties have taken five depositions and exchanged written discovery.

## STATEMENT OF THE ISSUES

(1) Does the Court have subject-matter jurisdiction over the takings claims challenged by Kemah?

(2) Does the Court have subject-matter jurisdiction over the procedural and substantive due process claims challenged by Kemah?

(3) Does the Court have subject-matter jurisdiction over the equal protection claims challenged by Kemah?

(4) Does the Court have subject-matter jurisdiction over the declaratory judgment claims challenged by Kemah?

(5) Does Plaintiffs' Second Amended Complaint state plausible causes of action against Kemah for which relief may be granted?

**STATEMENT OF FACTS**

**I.   DESCRIPTION OF PLAINTIFFS' PROPERTY AND BUSINESSES.**

### A. T&W's Land And 4-Story Building.

8.   Plaintiff T&W Holdings, LLC ("T&W") owns a 4-story mixed-use building situated on 5,650 square feet of land located at 606 & 608 6th Street, Kemah, Texas (the "Property).

9.   Since at least 2004, Plaintiff T&W and its predecessors-in-interest have continuously used the third floor of the building (Suite C) for residential purposes, including, short-term vacation rentals/bed and breakfast and long-term residential rentals.  In 2004, T&W's predecessor-in-interest obtained a change of occupancy permit for this type of residential use,[5] as reflected on the building permit issued and continued to use it for such purposes until the City of Kemah unlawfully issued a "zero-occupancy" red tag on July 8, 2022. Kemah does not issue residential certificates of occupancy.

10.   Since 1992, the fourth floor of the building has been lawfully used for residential purposes, including long and short-term rental/bed and breakfast, under permits issued by the City of Kemah until purposes until the City of Kemah unlawfully issued a "zero-occupancy" red tag on July 8, 2022.

### B. The Palapas Bar

11.   For the past 20 years, Plaintiff Palapas and its predecessors have continuously operated a bar called "Palapa's" on the first and second floors and

---

[5] See PX 5 - 2004 Building Permit and Change of Use Permit.

outdoor patio area of the building; more specifically described as 606 and 608 6th St., Suites A and B, Kemah, Texas. At all material times, Palapas had a Certificate of Occupancy to use the first and second floors of the building, until the City of Kemah unlawfully issued a "zero-occupancy" red tag on July 8, 2022.

### C. The Food Truck

12.    Plaintiff It's Five O'clock owns and operates a mobile food truck. From August 2020 to October 2021, the Food Truck was lawfully situated on Plaintiff T&W's private property—pursuant to a variance unanimously approved by Kemah City Council on August 19, 2020—until it was unlawfully seized by the City of Kemah in October 2021.

## II.    RELEVANT EVENTS LEADING UP TO CITY OF KEMAH'S UNLAWFUL ACTIONS AGAINST PLAINTIFFS.

### A. Resolution No. 2017-11 Is Passed By City Council To Create A "Special Commercial Area" On The South Side Of 6th Street.

13.    On September 17, 2017, the City of Kemah passed Resolution Number 2017-11 for the following stated purpose:

> Granting a variance for a special commercial area . . . in a corridor along the south side of Sixth Street between Bradford and Kipp Streets wherein a zero lot line is created behind which structures may be installed and utilized on the lots where setbacks were in place pursuant to Chapter 18 of the City Code but are now eliminated."[6]

### B. The City Approves A "Consent To Encroach" Form To Allow Property Owners To Build Beyond The Special Commercial Area.

14.    On April 4, 2018, the City of Kemah passed Agenda Item No. 12 titled

---

[6] PX 5.

"Consent to Encroach," authorizing the City of Kemah to enter into agreements with owners seeking to build beyond the "special commercial area" described above into the right of way.

### C. The City Grants T&W's Variance Application To Install A Wooden Deck And Food Truck.

15. In August of 2020, T&W submitted an application for variance to the City of Kemah to install a deck and food truck in the area of T&W's property within the special commercial area. The City of Kemah unanimously granted the requested variance at the city council meeting on August 19, 2020.[7]

### D. Kemah Freezes Over In Severe Winter Storm Uri, Causing Severe Damage To The Plumbing In T&W's Building.

16. In February 2021, a severe cold weather event known as Winter Storm Uri hit Southeast Texas, leaving most of the area in a hard freeze with no power or running water for several days.

17. The plumbing in T&W's building was severely damaged in the freeze. Many other businesses in the area, including Voodoo Hut, Monkey Bar, and Kipp Rose, sustained severe damage to their plumbing systems as well. Many local businesses were scrambling for parts to repair plumbing breakages after the freeze.

18. On February 15, 2021, Mayor Gale issued a Declaration of Disaster, triggering the city's emergency management plan.[8] As part of the emergency management plan, Mayor Gale allowed property owners to repair freeze-damaged

---

[7] PX 6.
[8] PX 1.

plumbing without first obtaining a permit.[9]  Notwithstanding, the applicable building codes do not require an owner to obtain a permit before making repairs.

### E. Plaintiffs Reopen Palapas, The Food Truck, And The Short-Term Rental Units After Making Necessary Plumbing Repairs.

19.   On or around March 11, 2021, Palapa Bar and the Food Truck reopened for business after making necessary plumbing repairs.  Unfortunately, the freeze damage was more extensive that initially believed, so further repairs to the freeze-damaged plumbing was necessary.

20.   In mid-March 2021, Mayor Gale hired Brandon Shoaf to serve as the City of Kemah's Building Official.[10]

21.   On or around March 25, 2021, Plaintiffs obtained an emergency work order for repair of freeze damage restarts.

22.   In April 2021, Plaintiffs' owner, Matthew Placek, met with Mayor Gale, City Administrator Gant, Building Official Brandon Shoaf, and Walter Wilson (General Manager of Palapa).[11]  The purpose of this meeting was to discuss future plans for Palapas.  During the meeting, Placek discussed his plans to replace 4,000 sf of concrete in the outdoor area, repaint the building, replace the palapa leaf roofing to comply with fire and safety code standards, convert the Mobile food truck into a compact kitchen, and place the food truck in the area designated in a variance approved by the City of Kemah.  The proposed plans did not, however, in

---

[9] *Id.*
[10] *Id.*
[11] *Id.*

any way change the type of use on any part of the property. Neither Shoaf nor any other city official raised any concerns or objections about the proposed plans.

23. On April 5, 2021, Plaintiffs commenced work on the 4,000 square-foot concrete job by breaking out the existing concrete. No city official raised any issues about the work being performed, including the deck, painting, plumbing and concrete. Therefore, Plaintiffs proceeded with the construction in accordance with the plans as discussed with the city officials.

24. On April 6, 2021, Brandon Shoaf conducted an inspection of the concrete work and walked all throughout outdoor area of the Property. After completing his inspection, Shoaf signed off on the permit for the concrete work. Shoaf raised no concerns about the plumbing and electrical repairs.

### F. In An About-Face, The City Of Kemah Begins Taking Unlawful Actions To Deprive Plaintiffs Of Their Vested Property Rights Under Existing Permits.

#### 1. *Refusal to issue permits; revocation of certificates of occupancy; and baseless stop work orders for the Palapa Bar.*

25. On April 14, 2021, Shoaf visited the Property to inquire about the installation of the wooden deck. The deck was built within the boundary lines of the Property and complied with the variance previously granted by the City of Kemah. Nevertheless, Shoaf insisted—without citing any code section or other authority—that a permit is required. Upon information and belief, no permits are required for ground level wooden decks under the Kemah Code of Ordinances (or any other law).

26.     Later that same day, on April 14, 2021, Shoaf returned to the Property and issued a "stop work" order on the deck project.  Again, Shoaf failed to cite any specific code section that was violated.  He merely demanded payment of permit fees.

27.     Therefore, on April 16, 2021, Palapas' manager, Walt Wilson, went to City Hall to deliver a check to pay the permit fee Shoaf demanded.  Shoaf refused to accept the check, however, and stated that no permit would be issued unless additional drawings and plans for the deck were submitted.

28.     Then, on April 20, 2021, Wilson attempted to file a permit application for the deck along with engineering drawings and plans and a check for the permit fees, in accordance with Shoaf's demands.  Despite including everything Shoaf requested, Shoaf again refused to accept the application.  He also incorrectly claimed that Plaintiffs variance expired.

29.     On April 21, 2021, Plaintiffs appealed Shoaf's decision to City Council.

30.     A few days later, on or around April 23, 2021, Shoaf sent a letter addressed to Walter Wilson stating, as follows:

> Allow this to serve as notification that thereof, of City Council's decision to not render a decision granting a variance allowing for overnight/extended parking of any mobile food vehicle at this time. In accordance with City Ordinances a Mobile food vehicle shall not operate between the hours of 2:00 a.m. and 6:00 a.m. and shall not be parked on location for more than a 24-hour period of time.[12]

31.     Shoaf cited no code section prohibiting a food truck from being stored on private property while it is not being operated, however.  Upon information and

---

[12] PX 13 - April 23, 2021 Letter from B. Shoaf regarding City Council's decision on variance application.

belief, there is no such code section. **In any event, this was a final decision made by City Council and the City Administrator and is the official position Kemah has taken ever since.**

32. On April 29, 2021, the City of Kemah posted a "red tag" notice at the Property stating, "No permit on file for mobile food vehicle. Please remove by 04/30/2021 @ 11:00 AM." No notice was provided that the City intended to tow or otherwise seize the Food Truck. In any event, the Kemah Code of Ordinances does not authorize the City of Kemah to tow or seize food trucks from private property for lacking a permit to operate. For this type of violation, the city is only authorized to impose fines if a food truck is operating without a permit.

33. On April 29, 2021, the City of Kemah issued a Stop Work Order ("Stop Work Order") for the Property. The Stop Work Order states as follows:

> City of Kemah was contacted by Galveston County Health District stating they would not be issuing a permit for a 'Food Establishment Permit' for stated address. At the present time the 'Mobile Food Vehicle' is not permitted and unlawfully stationed on location. Please remove the 'Mobile Food Vehicle' by Friday 4/30/2021 at 11:00am. End of report. BCS103.
>
> * * *
>
> This **STOP WORK ORDER** shall remain in effect until application is made to the city of Kemah permits department and the required permit is issued.

34. On the evening of April 29, 2021, Placek learned of the red tag notice during a call with Walt Wilson, General Manager of Palapa Bar. Placek immediately complied with the order by ceasing operations of the Food Truck.

### 2. Refusal to issue permits; revocation of certificates of occupancy; and baseless stop work orders for Short-Term Rental Units.

35. As previously noted, the third and fourth floors of the building have been used as residential units since at least 1992; and have been used exclusively for residential purposes since 2004. Plaintiff T&W purchased the Property with the expectation that he would be able to continue using these floors for residential purposes. In accordance with the Kemah Code of Ordinances applicable to Short-Term Rental properties, T&W registered with the City of Kemah and paid the applicable fees to rent the properties as vacation rental homes.

36. Despite the fact that no change in occupancy type resulted from renting the third and fourth floors as vacation rental homes, the City of Kemah made a final decision denying Plaintiffs' request for a certificate of occupancy for the third and fourth floors of the building. The City of Kemah's decision to deny Plaintiffs' request for a certificate of occupancy was based upon, *inter alia*, two flawed premises: (1) that the proposed use of the third and fourth floors of the building as short-term rentals resulted in a "change of occupancy type," which would require the building to be brought up to current code standards; and (2) that the proposed use must comply with all hotel ordinances and regulations. But renting residential property to tenants on a short-term basis does not constitute hotel use, nor does it result in a change of occupancy type, so long as the property is used for residential purposes. *See Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 291 (Tex. 2018). The City of Kemah, therefore, misapplied the

law by requiring the building to be brought up to current code standards applicable to hotels.

37.     To date, the City of Kemah has failed to articulate any valid basis to deny issuing permits or certificates of occupancy for the building.  Only generalized allegations of code violations have been asserted without any specificity as to what information is lacking or what work is required to cure them.  As a result, Plaintiffs T&W and Palapas have lost all substantially all economic use of all four floors of the building.

### 3. The City of Kemah unlawfully trespasses onto Plaintiffs' property and seizes the Food Truck.

38.     The morning of October 11, 2021, the City of Kemah caused Shoaf (or another person acting at his direction) to unlawfully enter Plaintiffs' private Property and seize the Food Truck.  The Food Truck was taken to an unknown destination without any advanced notice or due process whatsoever.  At the time of the unlawful trespass and seizure, the Food Truck was not operating and was lawfully stored on Plaintiffs' private property—within the Property boundary lines.

39.     What's more, Plaintiffs' counsel had been actively engaged in discussions with the City of Kemah—including Brandon Shoaf, Dick Gregg, III, and Dick Gregg, Jr., the City Attorneys for Kemah—to get clarity on the alleged code violations and as to what was required to bring everything into compliance—if anything.  At no time prior to the unlawful seizure did the City of Kemah contact Plaintiffs or their counsel to provide notice of their intent to enter the Property to seize the Food Truck.

40.     The City of Kemah's unlawful trespass and seizure of the Food Truck not only unlawfully deprived Plaintiff It's Five O'clock of its property, but also left T&W's Property and Palapas in a hazardous state that could have caused serious injury to patrons and by-passers. Specifically, the Food Truck was improperly disassembled from the deck, leaving an open area without a railing, posing a serious trip-and-fall hazard.

41.     On November 16, 2021, It's Five O'clock sent a Demand for Immediate Return of Mobile Food Vehicle Letter to the City of Kemah. As of the date of filing this Original Complaint, the City of Kemah and Shoaf have failed to respond.

## ARGUMENT AND AUTHORITIES[13]

### I.     THE COURT HAS SUBJECT-MATTER JURISDICTION.

#### A. Legal Standard – Rule 12(B)(1) Motion To Dismiss

42.     Rule 12(b)(1) authorizes dismissal of an action for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "In general, where subject matter jurisdiction is being challenged, the trial court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004) (citation omitted). In reviewing a motion under 12(b)(1), a court may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the

---

[13] Plaintiffs raise the same arguments in response to Kemah's Rule 12(b)(6) motion to dismiss.

court's resolution of disputed facts." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

43.     Where, as here, "the basis of the federal jurisdiction is also an element of the plaintiff's federal cause of action, the United States Supreme Court has set forth a strict standard for dismissal for lack of subject matter jurisdiction." *Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736, 741 (5th Cir. 1986). "Where the factual findings regarding subject matter jurisdiction are intertwined with the merits," federal courts apply the standard as set out in *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Id. at 742. The *Bell* standard prohibits district courts from dismissing for lack of subject-matter jurisdiction unless one of two exceptions applies: (1) the alleged claim "appears to be immaterial and made solely for the purpose of obtaining jurisdiction" or (2) "where such a claim is wholly insubstantial and frivolous." *Id*. at 741 (quoting *Bell*, 327 U.S. at 681–82, 66 S.Ct. 773). "Under the latter *Bell* exception, subject matter jurisdiction is lacking only 'if the claim has no plausible foundation, or if the court concludes that a prior Supreme Court decision clearly forecloses the claim.'" *Blue Cross & Blue Shield of Ala. v. Sanders,* 138 F.3d 1347, 1352 (11th Cir.1998) (quoting *Barnett v. Bailey,* 956 F.2d 1036, 1041 (11th Cir. 1992)).

44.     The rationale is twofold: "Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the claim is dismissed on the merits." *Williamson*, 645 F.2d at 415. Moreover, this method provides "a greater level of protection to the plaintiff who in truth is facing

a challenge to the validity of his claim" and whose allegations will be taken as true under a Rule 12(b)(6) motion instead. *Id*. at 415–16.

45.     "There is no clear test for when the 'intertwined with the merits' exception applies." *In re S. Recycling, L.L.C.*, 982 F.3d 374, 380 (5th Cir. 2020). Courts are counseled to "look instead to the extent to which the jurisdictional question is intertwined with the merits, considering such factors as whether the statutory source of jurisdiction differs from the source of the federal claim and whether judicial economy favors early resolution of the jurisdictional issue." *Id*. Another consideration is where "the jurisdictional issue can be extricated from the merits." Id. (quoting *Williamson*, 645 F.2d at 416 n.10).

46.     If the district court determines that the basis of federal jurisdiction is in fact "intertwined with the plaintiff's federal cause of action," and neither *Bell* exception applies, "the court should assume jurisdiction over the case and decide the case on the merits." *Clark*, 798 F.2d at 742 (citing *Williamson*, 645 F.2d at 415); *see Montez*, 392 F.3d at 150.

## B. Because The Basis Of Federal Jurisdiction Is "Intertwined With The Merits" Of Plaintiffs' Claims, The *Bell V. Hood* Standard Applies.

47.     Establishing municipal liability under Section 1983 requires proof of three elements: (1) an official policy or custom; (2) a policymaker who can be charged with actual or constructive knowledge of the policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (quoting *Monell v.*

*Dep't of Soc. Services of City of New York*, 436 U.S. 658, 690-94, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur[.]" *Id.*   Thus, when analyzing a claim against a municipality or governmental entity, the court must decide if the governmental entity promulgated "an official policy, practice, or custom," which could subject it to § 1983 liability. *Id.* Alternatively, a municipality can also be held liable if the final policy maker for that municipality commits an unconstitutional act. *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005) .

48.     Similarly, here, establishing subject-matter jurisdiction requires a showing that the wrongful acts were the result of "official policy" or a "final decision."  The Fifth Circuit has defined an "official policy" for the purposes of § 1983 liability to be either: (1) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's law-making officers ***or by an official <u>to whom the lawmakers have delegated policy-making authority</u>***; or (2) ***a persistent widespread practice of city officials*** or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.1984) (emphasis added).

49.     A city's governing body may delegate policymaking authority expressly or implicitly. *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984).

"A policy or custom is official only 'when it results from the decision or acquiescence of the municipal officer or body with 'final policymaking authority' over the subject matter of the offending policy." *Id.* (quoting *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737, 109 S. Ct. 2702, 105 L.Ed.2d 598 (1989)); *see also Burge v. St. Tammany Parish,* 336 F.3d 363, 370 (5th Cir. 2003) ("Knowledge on the part of a policymaker that a constitutional violation will most likely result from a given official custom or policy is a *sine qua non* of municipal liability under section 1983.").

50.     Here, Kemah City Council delegated final policy-making authority to Kemah's City Administrator pursuant to Kemah Ordinance No. 1186.[14]

## II.    PLAINTIFFS' TAKINGS CLAIMS ARE RIPE.[15]

51.     Kemah challenges the ripeness Plaintiffs' takings claims for lack of a final decision.  The crux of Kemah's argument is that Plaintiffs' takings claims are not ripe because, *according to Kemah*, there has been no "final decision" or "official policy" by Kemah's City Council which "cause[d] their employees to violate [Plaintiffs'] constitutional rights."[16]  This argument is without merit.

52.     Plaintiffs' takings claims are based upon final decisions and official policy implemented by Kemah officials with final decision-making authority.  The City Administrator—vested with final-decision-making authority pursuant to Kemah Ordinance 1186—made a final, irreversible decision and directed Building

---

[14] *See* Exhibit 15.
[15] Kemah does not challenge the ripeness of Plaintiffs' takings claims based upon (1) Kemah's revocation of the existing certificate of occupancy and permits issued on all four floors of the building; and (2) Kemah's deprivation of Plaintiffs' vested rights under two variances granted by Kemah City Council.
[16] Kemah's 2nd Am. MTD at ¶¶ 35-36.

Official Shoaf to effectively revoke T&W's and Palapas' vested rights to use the 4-story building under existing permits by issuing a "zero-occupancy red tag,"[17] thereby depriving T&W and Palapas of *all* use of the building without any pre-deprivation notice or opportunity for a hearing. T&W and Palapas already had permits and thus had vested rights to continue the same "grandfathered" use of the building under their existing permits and certificate of occupancy. Nevertheless, Kemah arbitrarily imposed a new requirement that Plaintiffs submit a "change of occupancy" application[18] as a prerequisite to being able to use of the building for any purpose. This not only deprived Plaintiffs of their vested property rights but also meant Plaintiffs would lose their grandfathered status. It also would require Plaintiffs to spend a substantial amount of money to bring the entire building up to current code standards.

53. Kemah also physically seized the food truck, depriving Plaintiffs of their vested right to locate and use the food truck in the area expressly permitted by the variance granted by Kemah City Council on August 19, 2020.

54. The foregoing decisions are sufficiently "final" for purposes of demonstrating ripeness. As the United States Supreme Court explained in *Pakdel*,

> The finality requirement is relatively modest. All a plaintiff must show is that "there [is] no question ... about how the 'regulations at issue apply to the particular land in question.'"
>
> * * *
>
> The rationales for the finality requirement underscore that nothing more than *de facto* finality is necessary. This requirement ensures that

---

[17] Neither the Texas Local Government Code nor the Kemah Code of Ordinance authorize a general type A municipality to issue a "zero occupancy red tag"—which is the same thing as revoking a certificate of occupancy.
[18] *See* DX A – Aff't of B. Shoaf at ¶ 8.

a plaintiff has actually "been injured by the Government's action" and is not prematurely suing over a hypothetical harm. Along the same lines, because a plaintiff who asserts a regulatory taking must prove that the government "regulation has gone 'too far,' " the court must first "kno[w] how far the regulation goes." Once the government is committed to a position, however, these potential ambiguities evaporate and the dispute is ripe for judicial resolution.[19]

55. Here, the government actions challenged by Plaintiffs are based upon "final decisions" and "official policy" made and implemented by Kemah's Building Official,[20] City Administrator,[21] City Council,[22] City Attorney,[23] and the Mayor.[24] And there is no question Kemah "committed to a position" and that Plaintiffs have "actually been injured."

56. T&W's entire building has been shut down for two years and for no valid reason. Palapas has not been able to use any part of the first or second floors of the building. And the food truck was seized from the premises despite City Council granting a variance explicitly authorizing it to be located there.

57. After Building Official Shoaf rendered a decision that the variance expired, Plaintiffs appealed Shoaf's decision to City Council and then re-applied for the same variance a second time. The appeal and second variance application was placed on the April 21, 2021 City Council Agenda.[25] The City voted on the

---

[19] *Pakdel v. City & Cnty. of San Francisco, California*, 210 L. Ed. 2d 617, 141 S. Ct. 2226, 2230 (2021) (emphasis added)(citations omitted).
[20] DX 1, Decl. of B. Shoaf at ¶¶ 11.
[21] PX 12; DX AA, Decl. of W. Gant at ¶ 18.
[22] PX 10.
[23] DX J.
[24] PX 1 - Aff't of former Mayor Terri Gale at ¶¶ 1-10.
[25] *See* https://www.kemahtx.gov/AgendaCenter/ViewFile/Agenda/_04212021-522, City Council Consent Agenda Item 11D.

request and made a final decision "not to make a decision".[26]  Unfortunately for Kemah, the decision "not to make a decision" actually constitutes a "final decision" waiving all objections and, therefore, granting the application by default under Section 1-14 of the Kemah Code of Ordinances, which provides "[t]he council shall act upon this review within 30 days of the appeal by the applicant or the municipal objection hereunder shall be deemed waived."

58.     Kemah also unequivocally decided that Plaintiffs must obtain a "change of occupancy" permit—even though Plaintiffs were not changing the occupancy type.  Plaintiffs applied and re-applied for plumbing permits, building permits, reinstatement of certificates of occupancy, and short-term rental permits, but were roadblocked each time on the faulty premise that a "change in occupancy" was required.  Because the City Attorney advised City Council and the Mayor that a change of occupancy was required based upon his erroneous analysis of permits and certificates of occupancy in Plaintiffs' file with the city,[27] it is unreasonable to assume that Kemah might change its position go against the advice given by the City Attorney on this legal issue.

59.     Kemah also seized the food truck from Plaintiffs' private property despite the fact that City Council granted a variance authorizing such use.  This decision was made by the City Administrator to whom Kemah City Council delegated final, decision-making power to "plan, develop, and implement" official

---

[26] *See* https://www.kemahtx.gov/AgendaCenter/ViewFile/Minutes/_04212021-522, City Council Minutes at 4, Consent Agenda Item 11D.
[27] *See* DX U at 1.

policies related to building code enforcement, short-term rentals, and mobile food truck regulations.[28]

60.     Plaintiffs' takings claims arising from these official decisions are ripe for judicial review.[29]   Further, the evidence shows that it is customary in Kemah for the City Administrator to make final decisions on matters concerning building code enforcement, short-term rentals, and mobile food truck regulations.[30]

61.     Plaintiffs' evidence demonstrates that this Court has subject-matter jurisdiction because official policy, practices or customs adopted and promulgated by Kemah City Council and its duly-authorized City Administrator were the "moving force" behind the constitutional violations:

- **Declaration of Brandon Shoaf**: Brandon Shoaf admits that it is the official policy of the City of Kemah to require a "change of occupancy" when an owner registers his property as a short-term rental.[31]   According to Shoaf, this is a "threshold requirement for consideration of such an application."[32]

- **Brandon Shoaf Deposition Transcript**: Shoaf admitted that City of Kemah made a final decision to tow the food truck on October 11, 2021, three days after the new food truck ordinance went into effect prohibiting food trucks within 200 feet of a residence.[33]   Shoaf admits that the new 200-foot rule was the sole reason he tagged and towed the food truck.[34]  This decision was unconstitutional because it deprived Plaintiffs of their vested rights already granted under the  variance Plaintiffs obtained to locate a food truck on premises.

- **Feb. 16, 2022 City Council meeting transcript**:[35] City Council members admitted to "targeting" certain Food Trucks, including Plaintiff It's Five O'Clock's food truck.  The operative version of the food truck ordinance that

---

[28] *See* Kemah Code of Ord. § 2-25; PX 1 - Aff't of former Mayor Terri Gale at ¶¶ 4-5.
[29] *Pakdel v. City & Cnty. of San Francisco, California*, 141 S. Ct. at 2230.
[30] *See* PX 1 - Aff't of former Mayor Terri Gale at ¶ 4-5.
[31] DX A - Decl. of B. Shoaf at ¶ 8; Doc. 36-1.
[32] *Id.*
[33] PX 11 - Brandon Shoaf Depo. Tr. at 60:
[34] PX 14
[35] PX 12.

was in effect as of August 2021—when T&W obtained a permit/variance to build a wooden deck and install a food truck on the Property—prohibited food trucks within 50 feet of a residence. Palapas food truck was located 161 feet away from the nearest residence.[36] The City amended the food truck ordinance to prohibit food trucks within 200 feet, however, to specifically bring Palapas food truck within 200 feet of a residence. Because T&W obtained its permit/variance before the amended food truck ordinance went into effect, the 200-foot prohibition does not apply to Palapas food truck.

- August 4, 2021 City Council meeting:[37] Building Official Shoaf stated that only one food truck in the City of Kemah had a city food truck permit. Councilmembers and Shoaf discussed repealing the statute thinking that then they could impose new rules on existing food trucks. Yet, no other food trucks were towed.

62.     Here, jurisdiction and the merits are intertwined because resolution of Plaintiffs' claims hinges on whether Kemah's actions amount to a violation of Plaintiffs' constitutional rights. Section 1983 both conveys jurisdiction and creates a cause of action. The determination of whether there was a "final decision" or "official policy" is intertwined with the merits of Plaintiffs' § 1983 claims. Where the challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, and assuming that the plaintiff's federal claim is neither insubstantial, frivolous, nor made solely for the purpose of obtaining jurisdiction, the district court should find that it has jurisdiction over the case and decide the case in a trial on the merits.

### III.     PLAINTIFFS' PHYSICAL TAKINGS CLAIMS ARE RIPE AND JUSTICIABLE.

63.     Kemah contends that the "vehicle-towing takings claim" is not justiciable because It's Five O'clock Here, LLC filed a request for administrative

---

[36] *See* DX AA at p. 9 (Doc. # 36-27).
[37] *See* https://www.kemahtx.gov/DocumentCenter/View/1790/2021-08-04-Council-Audio.

tow hearing and the justice court—acting in an administrative capacity—determined the City had "probable cause" to tow the food truck from Plaintiffs' property.[38]

64.    The primary purpose of filing this administrative "tow hearing" was to exhaust Plaintiff's administrative remedies, if necessary and out of an abundance of caution, to "ripen" part of the claims for damages sought by Plaintiff It's Five O'Clock Here against Kemah in this action.  Plaintiffs filed the request with an "England reservation" – *i.e.*, subject to and without waiving any rights or claims in this action.  Further, It's Five O'Clock filed a "trial de novo" appeal in Galveston County Court, which is "***a new trial in which the entire case is presented as if there had been no previous trial***."  Tex. R. Civ. P. 506.3 (emphasis added); *see also Interest of A.L.M.-F.*, 593 S.W.3d 271, 277 (Tex. 2019) ("A 'trial de novo' is a new and independent action in the reviewing court with 'all the attributes of an original action' as if no trial of any kind has occurred in the court below.").  Any findings of fact, conclusions of law, or other relief granted by the JP court, therefore, have been vacated and are a nullity.  *Id.*  Indeed, Kemah unequivocally admitted that the Justice Court's judgment is a "nullity," hence the reason it filed more than one motion to modify the judgment nonsuiting, without prejudice, Plaintiffs claims in the case.[39]

---

[38] Kemah's 2nd Am. MTD.

[39] The judgment nonsuiting the tow hearing case, without prejudice, also vacated the attorney's fees awarded to Kemah because it failed to request attorney's fees in its pleadings.

65. Because Plaintiff It's Five O'Clock has now successfully "ripened" all of its claims in the federal court suit by exhausting its administrative remedies in the justice court—to the extent it was even necessary to do so—Defendant City of Kemah's Rule 12(b)(1) motion to dismiss Plaintiff's claims on ripeness grounds is now moot and should be denied.

## IV. PLAINTIFFS' DUE PROCESS CLAIMS ARE RIPE.

66. Kemah only challenges the ripeness of Plaintiffs' procedural due process claim involving the unlawful seizure of the food truck. Kemah does not, however, challenge Plaintiffs' due process claims involving the revocation of the certificate of occupancy, the "zero occupancy red tag" issued to shut down the building, or the deprivation of T&W's and Palapas rights to install the food truck on Plaintiff T&W's property under the August 19, 2020 variance granted by City Council.

67. In its original motion to dismiss, Kemah asserted that that "Plaintiffs have not alleged facts showing Plaintiffs' procedural due process claim is separate and distinct from the vehicle-towing takings claim."[40] Kemah argues that "[b]ecause the takings claim is not ripe, this claim is also not ripe."[41] Kemah relies upon *John Corp. v. City of Houston*, 214 F.3d 573, 585 (5th Cir. 2000) and *Steward v. City of New Orleans*, 537 Fed. Appx. 552 (5th Cir. 2013) to support its argument. Kemah's reliance on *John Corp.* and *Steward* is misplaced, however, because those cases addressed the *Williamson County* state-litigation requirement

---

[40] Kemah's 1st Am. MTD at 21.
[41] *Id.*

that a plaintiff file suit in state court first before seeking relief in federal court. This requirement has since been abrogated by the United States Supreme Court in *Knick v. Twp. of Scott, Pennsylvania,* 204 L. Ed. 2d 558, 139 S. Ct. 2162 (2019). Kemah's reliance on *John Corp.* and *Steward* is therefore unavailing.

68.  The Fifth Circuit's opinion in *Archbold–Garrett v. New Orleans City*, 893 F.3d 318 (5th Cir. 2018) is instructive. In *Archbold–Garrett*, the court held that the property owners' procedural due process claim was not subsidiary to their takings claim and thus was not unripe along with the takings claim.[42] The court explained that an inverse condemnation action does not provide the same scope of damages available to remedy a standalone procedural due process injury, nor could it result in equitable relief.[43]

69.  Here, like the plaintiff in *Archbold–Garrett*, Plaintiffs' procedural due process claims do not overlap with their takings claims, because the scope of damages and remedies Plaintiffs seek are not the same. For Plaintiffs' takings claims, Plaintiffs are entitled to recover "just compensation" equal to the lost market rental value of their property. By contrast, Plaintiffs seek lost profits in connection with their due process claims.

70.  Further, a pre-deprivation notice and hearing are not required to establish a taking. But a pre-deprivation notice and hearing *are* required to establish a procedural due process claim. Kemah revoked Plaintiffs T&W and Palapas existing certificate of occupancy and deprived Plaintiffs of all use and

---

[42] *Id.* at 324.
[43] *Id.*

occupancy of the building without *any* pre-deprivation notice or hearing; seized the food truck and deprived Plaintiffs of their rights under the variances granted by City Council without adequate notice and without *any* pre-deprivation hearing; and refused to issue or act on any permit applications unless and until Plaintiffs submit a change of occupancy application, which necessarily would result in Plaintiffs losing their grandfathered status and thus would require the entire building to be brought up to current code standards. All of these actions deprived Plaintiffs of vested property rights in violation of their Fourteenth Amendment procedural and substantive due-process rights.

71.    In sum, Plaintiffs' due process claims are not subsumed into their takings claims and are ripe because no pre-deprivation notice or hearing were provided.

## V.    PLAINTIFFS' EQUAL PROTECTION CLAIMS ARE RIPE.

72.    Kemah also applied the law differently to Plaintiffs than it did to similarly-situated businesses. Most notably, the property adjacent to Plaintiffs' property, Bubble Jungle, was allowed to locate food trucks on its premises, even though the food trucks were within 200 feet of a residence. Both Palapas and Bubble Jungle had permits to locate food trucks on their property before the 200-foot prohibition went into effect, but the city only towed Palapas' food truck claiming it violated the 200-foot prohibition. Whereas, Bubble Jungle was allowed to locate food trucks within 200 feet of the same residence. What is more, the city amended the food truck ordinance to expressly allow Bubble Jungle to be the only

food truck park in town based upon the premise that it already obtained a permit to locate food trucks on site. The city disregarded the permit granting T&W, Palapas, and It's Five O'Clock the right to locate the food truck on the property, however, even though, like Bubble Jungle, the permits were obtained before the 200-foot prohibition went into effect.

## VI. PLAINTIFFS' DECLARATORY JUDGMENT CLAIMS ARE RIPE.

73.     Kemah asserts that Plaintiffs' declaratory judgment claims are not ripe for the same reasons it claims Plaintiffs' regulatory taking claims are not ripe. This argument is without merit for the same reasons previously stated herein— Kemah's actions are sufficiently "final" for purposes of ripeness. "[A] challenge to administrative regulations is fit for review if (1) the questions presented are 'purely legal one[s],' (2) the challenged regulations constitute 'final agency action,' and (3) further factual development would not 'significantly advance [the court's] ability to deal with the legal issues presented.' " *Dahl v. Vill. of Surfside Beach, Tex.*, No. 3:20-CV-201, 2022 WL 401466, at *2 (S.D. Tex. Jan. 11, 2022).

74.     Here, as demonstrated herein, the issues on which Plaintiffs seek declaratory relief are purely legal, the challenged regulations constitute 'final agency action, and further factual development would not significantly advance the court's ability to deal with the legal issues presented.

### MOTION FOR LEAVE TO FILE PLAINTIFFS' THIRD AMENDED COMPLAINT

75.     In the event and to the extent the Court finds that Plaintiffs Second Amended Complaint in any way fails to state a claim for which relief may be

granted, Plaintiffs respectfully move the Court for leave to file their Third Amended Complaint.

## MOTION TO ABATE CASE

76.     In the alternative, in the event the Court finds that any claim challenged by Defendant is not ripe, Plaintiffs respectfully move the Court to abate the case so that Plaintiffs may take any action necessary to ripen such claim.

## EVIDENTIARY OBJECTIONS

### I.    BUREAU VERITAS

77.     Plaintiffs object to and move to strike the Bureau Veritas inspection (DX G) on grounds that it lacks foundation, is conclusory, constitutes hearsay, and contains hearsay within hearsay.  Further, because Defendant moved to quash the Subpoena Duces Tecum directed to Bureau Veritas on grounds that it has no information bearing on the issue of subject matter jurisdiction, the Court should strike and exclude Defendant's Exhibit G for this reason as well.

### II.    DECLARATION OF BRANDON SHOAF

78.     Plaintiffs object to and move to strike all statements in Brandon Shoaf's affidavit referring to statements made by the inspector for Bureau Veritas. These statements are hearsay, contain hearsay within hearsay, and are inadmissible opinions given by a witness who has not been designated or qualified as an expert.   Further, the statements are conclusory and lack foundation in that no facts are provided to support the conclusion that there were any life-safety issues at the property.  To date, Kemah has not identified a single life-safety issue

at the property despite repeated requests by Plaintiffs to identify any life-safety issues at the property. And Brandon Shoaf's testimony establishes that he has no personal knowledge to testify about the condition of the inside of the building because he has never been in the building.

## PRAYER

WHEREFORE, Plaintiffs respectfully pray that the Court deny Defendant's motions to dismiss; grant Plaintiffs leave of court to file Plaintiffs' Third Amended Complaint; and grant such other and further relief at law and in equity to which Plaintiffs are justly entitled.

Respectfully submitted,

WILSON, CRIBBS + GOREN, P.C.

By: */s/ Brian B. Kilpatrick*
Brian B. Kilpatrick, TBN 24074533
Email: bkilpatrick@wcglaw.com
Scot Clinton, TBN 24045667
Email: sclinton@wcglaw.com
2500 Fannin Street
Houston, Texas 77002
Telephone (713) 222-9000
Facsimile (713) 229-8824

***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I certify that on April 4, 2023, the foregoing document was served electronically through the Court's ECF notification system upon all parties through their counsel of record.

*/s/ Brian B. Kilpatrick*
Brian B. Kilpatrick