Case 3:22-cv-00007   Document 79   Filed on 07/25/24 in TXSD   Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
July 25, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

| | | |
|---|---|---|
| T&W HOLDING CO., LLC, *et al.*, | § | |
| | § | |
| Plaintiffs. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:22-cv-00007 |
| | § | |
| CITY OF KEMAH, TEXAS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is a Motion to Dismiss Plaintiffs' Second Amended Complaint filed by Defendant City of Kemah, Texas (the "City"). Dkt. 53. Having reviewed the briefing, the record, and the applicable law, I recommend the motion be **GRANTED**.

## BACKGROUND

Plaintiffs T&W Holding Company, LLC ("T&W"), Palapas, Inc. ("Palapas"), and It's Five O'Clock Here, LLC ("Five O'Clock") have sued the City over the use of real property located at 606 and 608 6th Street in Kemah, Texas (the "Property"). T&W owns a four-story building on the Property (the "Building"). Palapas manages a bar on the first and second floors and outdoor patio area of the Building. Five O'Clock owns and operates a mobile food truck on the Property. The third and fourth floors of the Building have allegedly been used for short-term and long-term rentals since at least 2004.

The relevant allegations in Plaintiffs' Second Amended Complaint concern two distinct events: (1) the City's issuance of a zero-occupancy notice for the Building in July 2021, and (2) the City's towing of Five O'Clock's food truck in October 2021. I will describe each event in turn.

### A.     THE CITY ISSUES A ZERO-OCCUPANCY NOTICE FOR THE BUILDING.

In February 2021, Winter Storm Uri hit southeastern Texas. Plaintiffs allege the storm caused "catastrophic damage to the plumbing system" of the Building, and businesses in the area suffered similar damage. Dkt. 47 at 7. According to Plaintiffs, the City "allowed businesses in the area to repair broken water and sewer lines without permits," including T&W. *Id.*

In May 2021, T&W applied for a short-term rental permit because it wanted "to continue using [the third and fourth] floors [of the Building] for residential purposes," as T&W's predecessors allegedly had done. Dkt. 55 at 13; *see also* Dkt. 53-6 at 2–4. The City put the application on hold, telling T&W that it first needed to apply for a change of occupancy. According to City records, the Building has never been approved for residential use. *See* Dkt. 53-16 at 3.[1] T&W subsequently applied for a multi-use certificate of occupancy. *See* Dkt. 53-7 at 2.

A third-party contractor inspected the Building on July 8, 2021, to determine whether the Building conformed to the requirements for residential use. In an email following the inspection, Fire Marshal Brandon Shoaf ("Shoaf") informed T&W that the Building failed the inspection due to "a multitude of life safety hazards in the main structure." Dkt. 53-9 at 2. Shoaf issued a zero-occupancy notice for the Building "until the building obtains a passed inspection and occupancy is granted." *Id.* According to the City, when Shoaf issued the zero-occupancy notice, he acted under the authority of § 42-33 of Kemah's Code of Ordinances, which grants the fire marshal the right to order dangerous conditions in "buildings and premises within the city . . . to be removed or remedied." Dkt. 53-1 at 4. Plaintiffs allege that they "have lost . . . substantially all economic use of all four floors of the building" as a result of the zero-occupancy notice. Dkt. 47 at 12.

---

[1] The parties fiercely dispute the permitted use of the third and fourth floors of the Building. Plaintiffs claim that T&W's predecessors rented the third floor as short- and long-term rentals since "at least 2004," and the fourth floor as rentals since 1992. Dkt. 55 at 6. The City says that it has issued only a commercial certificate of occupancy for the third floor to operate as a consignment shop.

2

### B.   THE CITY TOWS FIVE O'CLOCK'S FOOD TRUCK.

On October 8, 2021, the City posted two sticker notices on Five O'Clock's food truck. The notices demanded the food truck be moved by October 11 because it was unpermitted and "parked illegally." Dkt. 53-12. Five O'Clock did not move the food truck and it was subsequently towed. According to Plaintiffs, the food truck was permitted and parked within the Property's boundary lines at all relevant times. The City, however, claims the food truck was unpermitted and parked in the public right-of-way.

Five O'Clock filed an action in the Justice of the Peace court for Precinct 1 of Galveston County to determine whether the City had probable cause to tow the food truck. The justice court determined the City's towing of the food truck "was supported by probable cause and authorized under Section 545.3051 of the Texas Transportation Code." Dkt. 53-18 at 2. The justice court then issued a final judgment. *See id.* Five O'Clock appealed the judgment and later voluntarily abandoned the appeal. *See* Dkts. 53-19, 53-20. Under controlling Texas law, the appeal of the justice court's ruling resulted in a vacatur of the decision, despite Plaintiffs ultimately abandoning the appeal. *See Harter v. Curry*, 105 S.W. 988, 989 (Tex. 1907) ("[W]hen an appeal is properly taken from the judgment of the justice court, . . . it operates to avoid the judgment, and . . . a subsequent voluntary dismissal in the county court does not restore it to validity.").

* * *

Plaintiffs sued the City in January 2022. In their Second Amended Complaint, Plaintiffs assert physical and regulatory takings, due-process, and equal-protection violations under the Fifth and Fourteenth Amendments of the United States and the Texas Constitution. They also ask for a declaratory judgment. The City now moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) and, alternatively, under Rule 12(b)(6).

## LEGAL STANDARDS

A. **RULE 12(b)(1)**

Federal courts have jurisdiction over a claim between parties only if the plaintiff presents an actual case or controversy. *See* U.S. CONST. art. III, § 2, cl. 1; *Okpalobi v. Foster*, 244 F.3d 405, 425 (5th Cir. 2001). "The many doctrines that have fleshed out that 'actual controversy' requirement—standing, mootness, ripeness, political question, and the like—are 'founded in concern about the proper—and properly limited—role of the courts in a democratic society.'" *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 541–42 (5th Cir. 2008) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)). Relevant to this case is the ripeness doctrine.

"[R]ipeness inquires as to 'whether the harm asserted has matured sufficiently to warrant judicial intervention.'" *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 267 (5th Cir. 2015) (quoting *Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 544–45 (5th Cir. 2008)). "[R]ipeness is a constitutional prerequisite to the exercise of jurisdiction." *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002). In determining whether a case is ripe, the court considers: "'the fitness of the issues for judicial resolution and the hardship to the parties of withholding court consideration.'" *TOTAL Gas & Power N. Am., Inc. v. Fed. Energy Regul. Comm'n*, 859 F.3d 325, 333 (5th Cir. 2017) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987)). "A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *New Orleans Pub. Serv.*, 833 F.2d at 587.

To test whether the party asserting jurisdiction has met its burden, a court may rely upon: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). The court "should consider the Rule

12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161. The party asserting jurisdiction bears the burden of proof. *See Ghedi v. Mayorkas*, 16 F.4th 456, 463 (5th Cir. 2021).

## B. RULE 12(b)(6)

Rule 12(b)(6) authorizes dismissal of a complaint when the plaintiff has failed "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. At the initial pleading stage, I accept all well-pleaded factual allegations as true. *See Twombly*, 550 U.S. at 555–56.

## DISCUSSION

The City raises two challenges to Plaintiffs' claims. First, the City argues that Plaintiffs' claims are not ripe for judicial review, meaning this court lacks jurisdiction.[2] Second, the City argues, in the alternative, that Plaintiffs fail to state a claim upon which relief can be granted. I will begin by discussing the claims stemming from the zero-occupancy notice.

---

[2] In support of its Rule 12(b)(1) motion, the City submitted 19 exhibits. Plaintiffs object to two of those exhibits, both related to the July 8, 2021 third-party inspection of the Building. *See* Dkt. 55 at 30–31. Because I have not relied on these exhibits in making my recommendation, I deny Plaintiffs' objections as moot.

After I held a Motion to Dismiss hearing on June 22, 2023, the parties filed supplemental briefing, all of which addressed whether the claims related to the zero-occupancy notice are ripe. *See* Dkts. 61, 63. Plaintiffs object and move to strike the City's post-hearing briefing. *See* Dkt. 64. Because I did not consider this briefing in concluding that the claims related to the zero-occupancy notice are unripe, I deny Plaintiffs' Motion to Strike Defendant's July 7, 2023, Letter and New Evidence, *id.*, as moot.

### A.   PLAINTIFFS' ZERO-OCCUPANCY NOTICE CLAIMS ARE NOT RIPE.

The City argues that Plaintiffs' takings, due-process, and equal-protection claims related to the zero-occupancy notice are not ripe for adjudication "because Plaintiffs' own pleadings as well as the evidence show the City has not made any final decision denying . . . a certificate of occupancy." Dkt. 53 at 28. I agree, though for a different reason than that initially advanced by the City.

#### *1.   Ripeness of Regulatory Takings Claims*

"[A] claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985), *overruled on other grounds by Knick v. Twp. of Scott, Pa.*, 588 U.S. 180 (2019); *see also DM Arbor Ct., Ltd. v. City of Houston*, 988 F.3d 215, 218 (5th Cir. 2021) ("A regulatory takings claim is not ripe until the government has reached a final decision on the challenged regulation."). "The finality requirement is relatively modest. All a plaintiff must show is that there is no question about how the regulations at issue apply to the particular [property] in question." *Pakdel v. City & Cnty. of S.F.*, 594 U.S. 474, 478 (2021) (cleaned up).

A plaintiff's "failure to properly pursue administrative procedures may render a claim unripe *if* avenues still remain for the government to clarify or change its decision." *Id.* at 480. That is not to suggest that a plaintiff must exhaust its administrative remedies. Rather, the focus is on whether "the government has reached a conclusive position." *Id.* Thus, a decision is not final where a formal appeal process is available and remains untested by the plaintiff. *See, e.g.*, *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1041 (5th Cir. 1998) (affirming dismissal where plaintiff's "failure to follow through with any formal process of appeal" constituted a lack of finality). Additionally, "[w]hen similar factual development is necessary for related claims—like the due process [and] equal protection . . . claims

6

[Plaintiffs] allege[]—then those claims are also not ripe until the regulator has made a final decision." *DM Arbor Ct.*, 988 F.3d at 218–19 (quotation omitted).

### 2. *The Kemah City Council Has Not Made a Final Decision.*

It is undisputed that, pursuant to § 2-93 of the Kemah Code of Ordinances, only the Kemah City Council ("City Council") can render a conclusive position. *See* KEMAH, TEX. ORDINANCES ("KEMAH CODE"), ch. 2, art. III, § 2-93 (Mar. 14, 1985) ("No suit of any nature whatsoever shall be instituted or maintained against the city unless the plaintiff therein shall aver and prove that previous to the filing of the original petition the plaintiff applied to the city council for redress, satisfaction, compensation, or relief, as the case may be, and that the same was by vote of the city council refused."). Despite the plain language of the Kemah Code reserving any conclusive position to City Council, neither party discussed § 2-93 in the Motion to Dismiss briefing, or at the hearing.

On June 12, 2024, I sua sponte raised the question of "whether Section 2-93 demonstrates that *only* a decision from City Council can ripen Plaintiffs' claims based on the zero-occupancy notice." Dkt. 66 at 1. In response, the City expressly conceded that § 2-93 "makes only a final decision of the Kemah City Council a *final decision.*" Dkt. 67 at 2. Plaintiffs implicitly conceded as much, arguing that they *did* appeal to City Council and that, in any event, "Defendant waived any argument that Plaintiffs' claims are not ripe for failure to exhaust administrative remedies under . . . § 2-93." Dkt. 71 at 3 n.8. Later, during a June 28, 2024 status conference, Plaintiffs expressly conceded that the zero-occupancy notice is "subject to [a] final decision by City Council." Dkt. 76 at 8. Accordingly, I will not belabor the point that any conclusive position regarding the zero-occupancy notice must come from City Council alone. *See* KEMAH CODE § 2-95 ("Neither the mayor, a city councilmember, nor any other officer or employee of the city shall have the authority to waive any of the provisions of this article.").

Having established that a conclusive position can come only from City Council, the question becomes whether Plaintiffs have appealed to City Council.

Plaintiffs contend that "[o]n September 1, 2021, City Council convened and considered Plaintiffs' request for reinstatement of the certificate of occupancy." Dkt. 71 at 4. In support, Plaintiffs attach the meeting minutes from the September 1, 2021 meeting of City Council. Those minutes show that the action item in question—"[t]hreatened legal action . . . from a local business"—was "SKIPPED AND NO ACTION WAS TAKEN." Dkt. 71-1 at 7–8. Moreover, an August 24, 2021 email from the Mayor requesting to add an action item to City Council's executive session regarding possible legal action shows that the action item concerned the "Bay Breeze Subdivision," not T&W, Palapas, or Five O'Clock. Dkt. 70-2 at 2. *After* the motion to dismiss briefing was completed, *after* the hearing on the motion to dismiss, *after* I requested supplemental briefing, *after* the status conference on that supplemental briefing, and *after* Defendants further supplemented the record—after more than *two years* of Defendants arguing that Plaintiffs' claims are not ripe—Plaintiffs submitted emails from August 2021, suggesting that their prior counsel had been in contact with the City's attorney regarding "a notice of claim." Dkt. 75-3 at 1. But even this inexplicably belated evidence cannot ripen Plaintiffs' claim based on the zero-occupancy notice. A notice of claim to City Council is "effective only when actually received in the office of the [city secretary]." KEMAH CODE § 2-94. There remains no evidence that Plaintiffs have ever served notice of a claim upon City Council in accordance with the Kemah Code. Thus, Plaintiffs have not appealed to City Council. Because City Council has not been afforded the opportunity to render a conclusive position, Plaintiffs' claim based on the zero-occupancy notice is not ripe.

### 3. *Plaintiffs Must Appeal to City Council.*

Having determined that City Council has not been given the opportunity to render a conclusive position on Plaintiffs' zero-occupancy notice claim, I must address Plaintiffs' contention that their takings claim is ripe because the zero-occupancy notice constitutes "a final, irreversible decision." Dkt. 55 at 19. In making this argument, Plaintiffs rely on two inapposite cases: *Pakdel v. City &*

*Cnty. of S.F.*, 594 U.S. 474 (2021), and *Bowlby v. City of Aberdeen*, 681 F.3d 215 (5th Cir. 2012). In *Pakdel*, there was "no question about how the regulations at issue apply to the particular land in question." 594 U.S. at 478 (cleaned up). Here, in contrast, City Council could afford Plaintiffs any manner of "redress, satisfaction, compensation or relief." KEMAH CODE § 2-93. To start, if the Mayor—whose authority derives from City Council—has the authority to "cancel and remove" an order of the Fire Marshal, City Council could do the same. Plaintiffs' arguments about the City having "dug in its heels" are misplaced. Dkt. 75 at 7. The Mayor may very well have dug in his heels, but the Mayor is not City Council. Of course, City Council might dig in its heels as well, but that is a fact that cannot and will not be developed until Plaintiffs appeal to City Council. Because there remains a question of what City Council would say or do if Plaintiffs put the issue of the zero-occupancy notice in front of it, *Pakdel* is inapplicable.

*Bowlby* is also inapplicable, as *Bowlby* concerned the physical taking of Bowlby's business permits, in which she had a property interest. *See* 681 F.3d at 223 ("In Bowlby's case, . . . her business permits were definitively taken away. While it is possible that, had she appealed to the mayor or Board of Alderman, she may have regained her permits, the actual taking is 'irreversible,' unlike the application of a regulation."). Here, however, whether framed in terms of the zero-occupancy notice—which, admittedly severely limits the ways in which Plaintiffs can use the Property—or framed in terms of the permits that Plaintiffs never had and will not receive because of the zero-occupancy notice, Plaintiffs complain of only a regulatory taking.[3] The Supreme Court has cautioned that it is "inappropriate to treat cases involving physical takings as controlling precedents

---

[3] A physical taking occurs "[w]hen the government physically takes possession of an interest in property for some public purpose." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002). But "regulations prohibiting private uses," even if they amount to "the functional equivalent of a forced leasehold," are not physical takings. *Id.* at 324 & n.19. Because the zero-occupancy notice "does not give the government any right to use the property, nor does it dispossess [Plaintiffs] or affect [their] right to exclude others," it is a regulatory taking. *Id.* n.19.

for the evaluation of a claim that there has been a 'regulatory taking,' and vice versa." *Tahoe-Sierra*, 535 U.S. at 323. Thus, *Bowlby* is irrelevant to this case.

I cannot say it any better than my esteemed colleague, Judge Gray Miller:

> There is no hardship to [Plaintiffs] in finding that this dispute is not ripe. For [1,113] days, [Plaintiffs] had the ability to . . . appeal the July [8, 2021 zero-occupancy notice]. . . . . [Plaintiffs do] not dispute [their] ability to . . . appeal [the zero-occupancy notice to City Council], nor [do they] argue why [an appeal to City Council] would be futile. . . . Accordingly, this issue is not fit for judicial resolution so long as "a different government unit with express authority to grant that relief" has not had the opportunity to render a decision. *City of Carrollton v. HEB Parkway S., Ltd.*, 317 S.W.3d 787, 799 (Tex. App.—Fort Worth 2010, no pet.). Because further factual development— . . . a final decision from the City Council—is needed, this dispute is not ripe.

*DM Arbor Ct., Ltd. v. City of Houston*, No. H-18-1884, 2020 WL 709913, at *7 (S.D. Tex. Feb. 11, 2020), *vacated and remanded because case finally ripened on appeal*, 988 F.3d 215 (5th Cir. 2021). Because Plaintiffs' claim based on the zero-occupancy notice is not ripe, it should be dismissed without prejudice to refiling once ripe.[4] Moreover, because "similar factual development is necessary for related claims—like the due process [and] equal protection . . . claims [Plaintiffs] allege[] . . ., those claims are also not ripe until [City Council] has made a final decision." *DM Arbor Ct.*, 988 F.3d at 218–19 (quotation omitted).

---

[4] "Plaintiffs assert that Defendant waived any argument that Plaintiffs' claims are not ripe for failure to exhaust administrative remedies under . . . KEMAH TEX. CODE §§ 2-93, 42-1." Dkt. 71 at 3 n.8. This assertion is misplaced. The issue here is one of finality, not exhaustion of administrative remedies. "Only after the final regulatory decision will a court have before it the facts necessary to evaluate a regulatory takings claim." *DM Arbor Ct.*, 988 F.3d at 218. The City has maintained that Plaintiffs' zero-occupancy notice claim is unripe from the outset of this litigation. Plaintiffs could have put this issue before City Council and ripened it at any point in the past *1,113 days*. In fact, they could have done so while maintaining this lawsuit. *See id.* at 219 (acknowledging that "an idiosyncratic feature of ripeness law" is that a case may ripen while pending). Dismissal without prejudice is the natural consequence of Plaintiffs' obstinate refusal to ripen their zero-occupancy notice claim.

Having determined that Plaintiffs' zero-occupancy notice claims are unripe, I do not reach the question of whether Plaintiffs have stated a claim based on the zero-occupancy notice. *See Ramming*, 281 F.3d at 161 ("The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits."); *see also DM Arbor Ct.*, 988 F.3d at 218 (observing that full factual development is required before addressing the merits). I will now turn my attention to Plaintiffs' food truck claims.

B. **PLAINTIFFS' FOOD TRUCK CLAIMS**

　　1. *Plaintiffs' Food Truck Claims Are Justiciable.*

Despite the City's arguments to the contrary, Plaintiffs' takings, due-process, and equal-protection claims related to the food truck are undeniably justiciable. Again, Plaintiffs' appeal of the justice court's ruling resulted in a vacatur of the decision. *See Harter*, 105 S.W. at 989. Given this vacatur, Plaintiffs are not attempting to make an "end-run around [an] adverse state court determination." Dkt. 53 at 31. Nor are Plaintiffs required to exhaust state-court remedies to ripen their claims. *See Pakdel*, 594 U.S. at 480 ("[A]dministrative exhaustion of state remedies is not a prerequisite for a takings claim when the government has reached a conclusive position." (quotation omitted)). Thus, Plaintiffs' food truck claims are ripe for adjudication. The question now becomes whether Plaintiffs have stated a takings, due process, or equal protection claim stemming from the City's towing of the food truck.

　　2. *The City Did Not Tow the Food Truck for "Public Use" As Required to State a Violation of the Takings Clause.*

The Fifth Amendment provides that no "private property [shall] be taken for public use, without just compensation." U.S. CONST. amend. V. Courts have long understood that the prohibition against government takings applies to the states and local governmental entities under the Fourteenth Amendment. *See Chi., B. & Q. R. Co. v. City of Chicago*, 166 U.S. 226, 235–42 (1897). Plaintiffs allege the City's towing of the food truck constitutes a taking without just compensation. *See* Dkt.

11

47 at 15–16. The City argues the towing was not for public use, and therefore Plaintiffs cannot state a takings claim. I agree.

There is broad consensus that "the towing and subsequent storage of vehicles does not constitute a public use." *Brite Fin. Servs., LLC v. Bobby's Towing Serv., LLC*, 461 F. Supp. 3d 549, 558 (E.D. Mich. 2020); *see also Bennis v. Michigan*, 516 U.S. 442, 452 (1996) ("The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain."); *Tate v. Dist. of Columbia*, 627 F.3d 904, 909 (D.C. Cir. 2010) ("Nor did the impoundment and subsequent sale of Tate's booted vehicle constitute a taking for a public use for which she was entitled to compensation under the Fifth Amendment's Takings Clause."); *Oko v. City of Cleveland*, No. 1:21-cv-2222, 2023 WL 4405270, at *13 (N.D. Ohio July 7, 2023) (collecting cases discussing why "the towing and impoundment of a vehicle for violation of municipal ordinances does not constitute a taking 'for public use'"); *Bey v. Hood*, No. 6:19-cv-00227, 2020 WL 3039147, at *7 (E.D. Tex. Mar. 30, 2020) ("Here, it is not in dispute that Plaintiff's property was not taken for public use, but rather her vehicle was towed because there was no licensed driver and it was not registered or insured in accordance with the laws. As such, any takings claim fails as a matter of law."). Because towing is not a public use, Plaintiffs' takings claim based on the City's towing of Five O'Clock's food truck must fail.

### 3. *Plaintiffs Fail to Allege a Due-Process Violation Because They Received Sufficient Post-Deprivation Process.*

Plaintiffs allege they were deprived of due process when the City towed Five O'Clock's food truck without (1) giving pre-deprivation notice and opportunity for a hearing; and (2) immediately providing a tow ticket. *See* Dkt. 47 at 17–18.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Breath v. Cronvich*, 729 F.2d 1006, 1010 (5th Cir. 1984). "[P]rior notice and hearing is not required to tow

illegally parked cars." *Id.*; *see also Lewis v. Hanemann*, No. 14-3368, 2015 WL 5883547, at *9 (W.D. La. Aug. 4, 2015) ("To the extent that plaintiff complains that his car was towed without prior notice and hearing, the Fifth Circuit has held, in the analogous context of illegally parked cars, that same is not required."). Rather, "[w]hen a car is towed or impounded, some form of fair and impartial hearing at which an owner is provided an opportunity to challenge the lawfulness of removing his car and assessing charges against him must be provided within a reasonable time period." *Breath*, 729 F.2d at 1011.

It is abundantly clear from the face of Plaintiffs' Second Amended Complaint that Plaintiffs received constitutionally adequate post-deprivation due process. Texas law provides that the owner of a towed vehicle "is entitled to a hearing on whether probable cause existed for the removal." TEX. OCC. CODE § 2308.452. Plaintiffs availed themselves of this process when Five O'Clock requested and received a tow hearing with the Justice of the Peace for Precinct 1 of Galveston County. Although the hearing did not result in Plaintiffs' preferred outcome, "[t]he constitution does not guarantee [litigants] a particular outcome." *Cohly v. Miss. Insts. of Higher Learning*, No. 3:22-cv-332, 2023 WL 3193309, at *8 (S.D. Miss. Mar. 27, 2023). Moreover, the subsequent vacatur of the justice court's ruling does not change the fact that Plaintiffs received constitutionally adequate post-deprivation process.

Plaintiffs also allege that they were immediately entitled to—but did not receive—a tow ticket. Under Texas law, a copy of the tow ticket must be (1) "given to the vehicle owner, if the owner or operator is present and available at the time of the tow," and (2) "delivered to the vehicle storage facility." TEX. ADMIN. CODE § 86.709(b). Assuming the City failed to provide Five O'Clock with a tow ticket as required by law, such an allegation does not give rise to a due process claim so long as the vehicle owner is provided an adequate post-deprivation process. *See Breath*, 729 F.2d at 1010. Because Plaintiffs received constitutionally adequate post-

13

deprivation due process, Plaintiffs have failed to state a due process claim. This claim should be dismissed.

### 4. *Plaintiffs Fail to State an Equal Protection Violation Because They Have Not Identified a Similarly Situated Comparator.*

Lastly, Plaintiffs allege the City violated the Equal Protection Clause when the City "applied the food truck ordinance to Plaintiffs unequally to other similarly-situated property owners." Dkt. 47 at 19. "Generally, to establish an equal protection claim the plaintiff must prove that similarly situated individuals were treated differently." *Wheeler v. Miller*, 168 F.3d 241, 252 (5th Cir. 1999). "A class-of-one equal-protection claim lies 'where the plaintiff alleges that [it] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Integrity Collision Ctr. v. City of Fulshear*, 837 F.3d 581, 586 (5th Cir. 2016) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).[5] Here, Plaintiffs' class-of-one equal protection claim fails on both fronts.

To understand why Plaintiffs' claim fails, it is worth reviewing the allegations in the Second Amended Complaint that speak to the food truck towing:

> 69. Kemah applied the food truck ordinance to Plaintiffs unequally to other similarly[]situated property owners. Specifically, Plaintiffs and the neighboring property know[n] as Bubble Jungle are both located within 200 feet of the same residence on Kipp St. And both Plaintiffs and Bubble Jungle were issued permits by Kemah to locate food trucks on their respective properties. But, when Kemah passed the new food truck ordinance on October 6, 2021, it seized the food truck from Plaintiffs' property for being within 200 feet of a

---

[5] The City contends that, "[t]o the extent Plaintiffs attempt to bring a 'selective enforcement' equal protection claim, they fail" because they have not alleged "that the government official's acts were motivated by improper considerations." Dkt. 53 at 39 (quoting *Bryan v. City of Madison*, 213 F.3d 267, 276–77 (5th Cir. 2000). But Plaintiffs are not asserting a selective enforcement equal protection claim—they are asserting a "class of one" equal protection claim. *See Bryan*, 213 at 276–77 (distinguishing between "the standard equal protection analysis" and a selective enforcement claim). Thus, Plaintiffs are not required to allege an impermissible motive—Plaintiffs need only allege that there is no rational basis for the difference in treatment.

>residence; whereas, Bubble Jungle was allowed to locate food trucks on its property.

Dkt. 47 at 19.

To allege that a comparator is similarly situated, Plaintiffs must allege facts that "support an inference of a high degree of similarity between the plaintiff and the comparators in the areas relevant to the government's purpose or mission." *Lindquist v. City of Pasadena*, 656 F. Supp. 2d 662, 687 (S.D. Tex. 2009), *aff'd*, 669 F.3d 225 (5th Cir. 2012). Although Plaintiffs allege that "the neighboring *property* know[n] as Bubble Jungle" is located within 200 feet of the same residence as Plaintiffs, *id.* (emphasis added), Plaintiffs do *not* allege that Bubble Jungle's *food truck* was located within 200 feet of a residence *at the time that Plaintiffs' food truck was seized*. Moreover, Plaintiffs do not allege that their food truck was located outside of 200 feet of a residence. Put simply, Plaintiffs fail to allege that Bubble Jungle's *food truck* (as opposed to its property) and Five O'Clock's food truck were both within 200 feet of a residence at the time that Five O'Clock's food truck was towed. Accordingly, Plaintiffs have not alleged sufficient facts to suggest that Bubble Jungle's food truck was similarly situated to Five O'Clock's food truck. Thus, Plaintiffs have failed to allege an equal protection claim against the City.[6] *See, e.g.*, *Samaad v. City of Dallas*, 940 F.2d 925, 941–42 (5th Cir. 1991) (plaintiffs failed to state a violation of the Equal Protection Clause where they did not identify a similarly situated comparator); *Jackson Ct. Condos., Inc. v. City of New Orleans*, 874 F.2d 1070, 1080 (5th Cir. 1989) (same).

C. **PLAINTIFFS' REQUEST FOR DECLARATORY RELIEF SHOULD BE DISMISSED.**

Plaintiffs request declaratory relief as to their status under § 22-47(3) of Kemah's Code of Ordinances, which states that no business can "change the

---

[6] Nor have Plaintiffs alleged a lack of rational basis for the City's treatment. Because Plaintiffs fail to dispute—and thus implicitly concede—that their food truck was *within* 200 feet of a residence in violation of the ordinance, and because it is unclear whether Bubble Jungle's food truck was also violating the 200-foot rule at the same time that Five O'Clocks's food truck was towed, it is impossible for me to infer a lack of a rational basis.

15

occupancy type of an existing building without first bringing the building into compliance with all applicable building codes, ordinances, local, county, state and federal laws and registration requirements." Dkt. 47 at 20. Specifically, Plaintiffs seek a declaratory judgment that:

> (i) no change of occupancy type would result from using the third and fourth floors of the building as short-term rental units so long as the use is for residential purposes, including as short-term rental units; and (ii) use of the third and fourth floors of the building as short-term rental units does not constitute hotel use and is not subject to hotel regulations.

*Id.*

The Federal Declaratory Judgment Act does not create an independent cause of action. *See Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 932 (5th Cir. 2023). Rather, "[i]n a declaratory judgment action, the parties litigate the underlying claim, and the declaratory judgment is merely a form of relief that the court may grant." *Val-Com Acquisitions Tr. v. CitiMortgage, Inc.*, 421 F. App'x 398, 400–01 (5th Cir. 2011). "Because Plaintiff[s'] only substantive claims failed to state a cause of action upon which relief can be granted, Plaintiff[s] ha[ve] no underlying claim to which [they] can tether [their] claim under the Declaratory Judgment Act." *Basye v. Wells Fargo Bank, N.A.*, No. 3-12-cv-4098, 2013 WL 2110043, at *4 (N.D. Tex. May 16, 2013). The declaratory judgment claim should be dismissed.

D. **PLAINTIFFS SHOULD NOT BE PERMITTED TO AMEND THEIR COMPLAINT.**

Plaintiffs originally filed this lawsuit in January 2022. *See* Dkt. 1. Plaintiffs filed an Amended Complaint about seven weeks later. *See* Dkt. 10. Almost one year later, I granted Plaintiffs' request to file a Second Amended Complaint. *See* ECF Minute Entry, Jan. 17, 2023; Dkt. 47. Now, Plaintiffs make a cursory request for leave to amend their complaint yet again "to the extent the Court finds that Plaintiffs['] Second Amended Complaint in any way fails to state a claim for which relief may be granted." Dkt. 55 at 29–30. Plaintiffs do not attach a proposed

amended complaint or even allude to what new facts they might allege if permitted to amend.

"The decision to grant or deny a motion to amend is in the sound discretion of the trial court." *Avatar Expl., Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 320 (5th Cir. 1991). "[A] bare bones motion to amend [is] futile when it fails to apprise the district court of the facts that [Plaintiffs] would plead in an amended complaint." *Edionwe v. Bailey*, 860 F.3d 287, 295 (5th Cir. 2017) (cleaned up). Because Plaintiffs have failed to explain what facts would be included in yet another amended pleading, their latest request to amend should be denied. *See Rombough v. Bailey*, 733 F. App'x 160, 165 (5th Cir. 2018) ("[Plaintiff] failed to apprise the court of the facts she would plead in her amended complaint; therefore the district court did not err when it denied her motion to amend as futile."). Accordingly, Plaintiffs' request to file a Third Amended Complaint is denied.

## CONCLUSION

For the reasons explained above, I recommend the City's Motion to Dismiss (Dkt. 53) be **GRANTED**.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 25th day of July 2024.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE